PETITION FOR WRIT OF HABEAS CORPUS: 28 USC §2254 (Rev. 9/10)
ADOPTED BY ALL FEDERAL COURTS IN TEXAS

**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT OF TEXAS

## IN THE UNITED STATES DISTRICT COURT

FOR THE ___EASTERN___ DISTRICT OF TEXAS    JUN -5 2018

___BEAUMONT___ DIVISION

BY
DEPUTY_____

## PETITION FOR A WRIT OF HABEAS CORPUS BY
## A PERSON IN STATE CUSTODY

MARSHALL SHANE LOVELL
_____
PETITIONER
(Full name of Petitioner)

MARK W. STILES UNIT, BEAUMONT TX
_____
CURRENT PLACE OF CONFINEMENT

vs.

TDCJ 01970459 SID 04217603
_____
PRISONER ID NUMBER

LORIE DAVIS-DIRECTOR, TDCJ-CID
_____
RESPONDENT
(Name of TDCJ Director, Warden, Jailor, or
authorized person having custody of Petitioner)

1:18cv 269
_____
CASE NUMBER
(Supplied by the District Court Clerk)

### INSTRUCTIONS - READ CAREFULLY

1.  The petition must be legibly handwritten or typewritten and signed and dated by the petitioner, under penalty of perjury. Any false statement of an important fact may lead to prosecution for perjury. Answer all questions in the proper space on the form.

2.  Additional pages are not allowed except in answer to questions 11 and 20. Do not cite legal authorities. Any additional arguments or facts you want to present must be in a separate memorandum. The petition, including attachments, may not exceed 20 pages.

3.  Receipt of the $5.00 filing fee or a grant of permission to proceed *in forma pauperis* must occur before the court will consider your petition.

4.  If you do not have the necessary filing fee, you may ask permission to proceed *in forma pauperis*. To proceed *in forma pauperis*, (1) you must sign the declaration provided with this petition to show that you cannot prepay the fees and costs, and (2) if you are confined in TDCJ-CID, you must send in a certified *In Forma Pauperis* Data Sheet form from the institution in which you are confined. If you are in an institution other than TDCJ-CID, you must send in a certificate completed by an authorized officer at your institution certifying the amount of money you have on deposit at that institution. If you have access or have had access to enough funds to pay the filing fee, then you must pay the filing fee.

5.    Only judgments entered by one court may be challenged in a single petition. A separate petition must be filed to challenge a judgment entered by a different state court.

6.    Include all of your grounds for relief and all of the facts that support each ground for relief in this petition.

7.    Mail the completed petition and one copy to the U. S. District Clerk. The "Venue List" in your unit law library lists all of the federal courts in Texas, their divisions, and the addresses for the clerk's offices. The proper court will be the federal court in the division and district in which you were convicted (for example, a Dallas County conviction is in the Northern District of Texas, Dallas Division) or where you are now in custody (for example, the Huntsville units are in the Southern District of Texas, Houston Division).

8.    Failure to notify the court of your change of address could result in the dismissal of your case.

---

## PETITION

**What are you challenging?** (Check all that apply)

☒     A judgment of conviction or sentence,     (Answer Questions 1-4, 5-12 & 20-25)
             probation or deferred-adjudication probation.
☐     A parole revocation proceeding.     (Answer Questions 1-4, 13-14 & 20-25)
☐     A disciplinary proceeding.     (Answer Questions 1-4, 15-19 & 20-25)
☐     Other:_____     (Answer Questions 1-4, 10-11 & 20-25)

**All petitioners must answer questions 1-4:**
**Note:** In answering questions 1-4, you must give information about the conviction for the sentence you are presently serving, even if you are challenging a prison disciplinary action. (Note: If you are challenging a prison disciplinary action, do not answer questions 1-4 with information about the disciplinary case. Answer these questions about the conviction for the sentence you are presently serving.) Failure to follow this instruction may result in a delay in processing your case.

1.    Name and location of the court (district and county) that entered the judgment of conviction and sentence that you are presently serving or that is under attack: _____

    411th Judicial Dist. Polk County Texas--2 Charges possession

    with intent to deliver--50 years and 2000.00 fine each

2.    Date of judgment of conviction: November 3, 2014  (Plea Hearing)
                           December 18, 2014 (Sentence)

3.    Length of sentence: 50 Years and 2000.00 fine on each charge

4.    Identify the docket numbers (if known) and all crimes of which you were convicted that you wish to challenge in this habeas action: 22749 and 22709

**Judgment of Conviction or Sentence, Probation or Deferred-Adjudication Probation:**

5.  What was your plea? (Check one)  ☐ Not Guilty  ☒ Guilty  ☐ Nolo Contendere

6.  Kind of trial: (Check one)  ☐ Jury  ☒ Judge Only

7.  Did you testify at trial?  ☐ Yes  ☒ No

8.  Did you appeal the judgment of conviction?  ☒ Yes  ☐ No

9.  If you did appeal, in what appellate court did you file your direct appeal? <u>1st District</u>
    <u>of Texas, Houston TX</u>    Cause Number (if known): <u>01-15-00045 CR</u>
    <u>01-15-00046 CR</u>

    What was the result of your direct appeal (affirmed, modified or reversed)? <u>Affirmed</u>

    What was the date of that decision? <u>December 29, 2015</u>

    If you filed a petition for discretionary review after the decision of the court of appeals, answer the following:

    Grounds raised: <u>1) Illegal Search and Seizure without Probable Couse, Judge</u>
    <u>Not Neutral and Detached. 2) Affiant of Warrant had no knowledge of events</u>
    <u>and did not swear Oath to Probable Cause Affidavit</u>

    Result: <u>Refused</u>

    Date of result: <u>May 18, 2016</u>    Cause Number (if known): <u>PD-0065-16</u>
    <u>PD-0066-16</u>

    If you filed a petition for a *writ of certiorari* with the United States Supreme Court, answer the following:

    Result: <u>Not Applicable</u>

    Date of result: <u>Not Applicable</u>

10. Other than a direct appeal, have you filed any petitions, applications or motions from this judgment in any court, state or federal? This includes any state applications for a writ of habeas corpus that you may have filed.  ☒ Yes  ☐ No

11. If your answer to 10 is "Yes," give the following information:

    Name of court: <u>411th Judical District, Polk County Texas</u>

    Nature of proceeding: <u>State Habeas Corpus, Article 11.07</u>

    Cause number (if known): <u>22749A and 22709A</u>

Date (month, day and year) you filed the petition, application or motion as shown by a file-stamped date from the particular court: Placed in Inst. Mail Feb. 10 2017--Court did not file stamp date until Feb 27, 2017

Grounds raised:1) Plea not Knowing,Intelligent, or voluntary;2) Aggregate Lab Analysis and Hearing; 3) Illegal Search and Seizure; 4)Brady "type" Violation; 5)Ineffective assistance of trial counsel; 6) Ineffective assistance of appellate counsel; 7) Denial of Fair trial/Competency; 8)Double Jeopardy.

Date of final decision: Feb. 7, 2018

What was the decision? Denied upon the findings of Trial Court w/o a hearing.

Name of court that issued the final decision: Texas Court of Criminal Appeals

As to any second petition, application or motion, give the same information:

Name of court: 411th Judical District - Polk County Texas

Nature of proceeding: Motion to Compel- (the Court to submit Art. 11.07 to TCCA)

Cause number (if known): 22709A and 22749A

Date (month, day and year) you filed the petition, application or motion as shown by a file-stamped date from the particular court: Sept. 10, 2017 via Certified Mail (Court did not send file stamp acknowlement)

Grounds raised: Court file Stamped Pet. Writ on Feb. 27, 2017 contrary to rec. Court failed to submit 11.07 to Texas Court Criminal Appeals by the 181st day after designation of issues, that it did not comnplete, in violation of Texas Rule of Appellate Procedure 73.4 and 73.5

Date of final decision: October 2, 2017--Texas Court of Criminal Appeals Rec. 11.07

What was the decision? Trial Court never responded, other than to submit Writ

Name of court that issued the final decision: no decision, only responsive action

*If you have filed more than two petitions, applications or motions, please attach an additional sheet of paper and give the same information about each petition, application or motion.*

12.   Do you have any future sentence to serve after you finish serving the sentence you are attacking in this petition?      ☐ Yes      ☒ No

(a)   If your answer is "Yes," give the name and location of the court that imposed the sentence to be served in the future: 

Not Applicable

(b)   Give the date and length of the sentence to be served in the future: 

Not Applicable

(c)     Have you filed, or do you intend to file, any petition attacking the judgment for the sentence you must serve in the future?     ☐ Yes     ☑ No

**Parole Revocation:**

13.     Date and location of your parole revocation: _____

14.     Have you filed any petitions, applications or motions in any state or federal court challenging your parole revocation?     ☐ Yes     ☐ No

        If your answer is "Yes," complete Question 11 above regarding your parole revocation.

**Disciplinary Proceedings:**

15.     For your original conviction, was there a finding that you used or exhibited a deadly weapon?     ☐ Yes     ☐ No

16.     Are you eligible for release on mandatory supervision?     ☐ Yes     ☐ No

17.     Name and location of the TDCJ Unit where you were found guilty of the disciplinary violation:

        _____

        Disciplinary case number: _____

        What was the nature of the disciplinary charge against you? _____

18.     Date you were found guilty of the disciplinary violation: _____

        Did you lose previously earned good-time days?     ☐ Yes     ☐ No

        If your answer is "Yes," provide the exact number of previously earned good-time days that were forfeited by the disciplinary hearing officer as a result of your disciplinary hearing:

        _____

        Identify all other punishment imposed, including the length of any punishment, if applicable, and any changes in custody status:

        _____

        _____

        _____

19.     Did you appeal the finding of guilty through the prison or TDCJ grievance procedure?     ☐ Yes     ☑ No

        If your answer to Question 19 is "Yes," answer the following:

        Step 1  Result: _____

–5–

Date of Result: _____ N/A _____

Step 2 Result: _____ Not Applicable _____

Date of Result: _____ N/A _____

**All petitioners must answer the remaining questions:**

20.    For this petition, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States.  Summarize briefly the facts supporting each ground.  If necessary, you may attach pages stating additional grounds and facts supporting them.

CAUTION: To proceed in the federal court, you must ordinarily first exhaust your available state-court remedies on each ground on which you request action by the federal court.  Also, if you fail to set forth all the grounds in this petition, you may be barred from presenting additional grounds at a later date.

A.    **GROUND ONE:** _____ Space insufficient to present all 9 grounds, therefore
All Grounds are Listed in Attachment "A" begining on page 11 _____

Supporting facts (Do not argue or cite law.  Just state the specific facts that support your claim.):

See supporting facts for Ground 1 on page 11 and Habeas Corpus

Memorandum at pg 1 and 2

B.    **GROUND TWO:** _____ Space insufficient to present the 9 grounds, therefore
All Grounds are listed in Attachment "A" begining on pg 11 _____

Supporting facts (Do not argue or cite law.  Just state the specific facts that support your claim.):

supporting facts for Ground 2 on page 11 and Habeas Corpus

Memorandum at page 3-5

C.   **GROUND THREE:**   Ground 3 is listed in Attachment "A" page 11

Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

Supporting Facts for Ground 3 begin on pg 11 thru 12

and Memorandum at 6-11

D.   **GROUND FOUR:**   Ground Four is listed in Attachment "A" page 12

Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

Supporting Facts for Ground Four are on Attachment "A" page 12 and
Memorandum at 12-15

|  |  | Mem Pg |
|---|---|---|
| E. | Ground Five with supporting facts listed on Attachment "A" pg 12-13 | 16-26 |
| F. | Ground Six with supporting facts listed on Attachment "A" pg 13 | 27-28 |
| G. | Ground Seven with supporting facts listed on Attachment "A" pg 13-14 | 29-30 |
| H. | Ground Eight with supporting facts listed on Attachment "A" pg 14 | 31-32 |
| I. | Ground Nine with supporting facts listed on Attachment "A" pg 14 | 33-39 |

21.   Relief sought in this petition: That this Honorable Court Find cause 22749 absent
probable cause, signed by a non-neutral and detached Judge, and that warrant
affidavit was never sworn to. Overturn Petitioners convictions on these
constitutional grounds. In Cause 22709, find forced entry into residence
where petitioner was not confirmed to have been seen by any reliable source
and that the subsequent search that followed without a warrant illegal and
that the "Conduct of Possession" was not proven by State in either cause(s).
That Convictions be overturned, Sentences vacated, and any resonable relief
This Honorable Court deems fit and proper in the instant cases.

22.  Have you previously filed a federal habeas petition attacking the same conviction, parole revocation or disciplinary proceeding that you are attacking in this petition?   ☐ Yes   ☒ No
If your answer is "Yes," give the date on which <u>each</u> petition was filed and the federal court in which it was filed. Also state whether the petition was (a) dismissed without prejudice, (b) dismissed with prejudice, or (c) denied.

```
Not Applicable
```

If you previously filed a federal petition attacking the same conviction and such petition was denied or dismissed with prejudice, did you receive permission from the Fifth Circuit to file a second petition, as required by 28 U.S.C. § 2244(b)(3) and (4)?   ☐ Yes   ☒ No

23.  Are any of the grounds listed in question 20 above presented for the first time in this petition?
☒ Yes   ☐ No

If your answer is "Yes," state <u>briefly</u> what grounds are presented for the first time and give your reasons for not presenting them to any other court, either state or federal.

```
Ground 9 is "Judical Bias on Facially invalid Warrant" is a Direct result
 of Direct Appeal filed with the 1st District of Texas on Illegal Search,
 so it could not be addressed in State Habeas Corpus. However it was
 addressed to States Highest Court in "Petition for Discretionary Review"
 which was refused.
```

24.  Do you have any petition or appeal now pending (filed and not yet decided) in any court, either state or federal, for the judgment you are challenging?   ☐ Yes   ☒ No

If "Yes," identify each type of proceeding that is pending (i.e., direct appeal, art. 11.07 application, or federal habeas petition), the court in which each proceeding is pending, and the date each proceeding was filed.

```
Not Applicable
```

25.  Give the name and address, if you know, of each attorney who represented you in the following stages of the judgment you are challenging:

(a)  At preliminary hearing: Michael Davis, P.O. Box 457 Cold Spring TX 77331

(b)  At arraignment and plea: Michael Davis

(c)  At trial: Micahel Davis

(d)  At sentencing: Micahael Davis

(e)  On appeal: Mike Aduddell 220 N. Thompson suite 101 Conroe TX 77301

(f)  In any post-conviction proceeding: Not applicable

(g)    On appeal from any ruling against you in a post-conviction proceeding: _____

        Not Applicable

## Timeliness of Petition:

26.    If your judgment of conviction, parole revocation or disciplinary proceeding became final over one year ago, you must explain why the one-year statute of limitations contained in 28 U.S.C. § 2244(d) does not bar your petition.[1]

Being Close on time, Petitioner shows: Appellate Court affirmed Dec. 29, 2015 Petition for Discretionary Review timely filed and refused. Court of Appeals

issued Mandate for "Finality" of Conviction(s) June 24, 2016-Starting ADEPA Clock: State Habeas Corpus Art. 11.07 placed in Mark W. Stiles Unit Law Library U.S. Mail Box on Feb. 10, 2017- using up 231 days.

Texas Court of Criminal Appeals denied on Feb. 7, 2018 Restarting ADEPA Clock. On May 31, 2018 Petition and Writ signed placing in US Mail Box located in Mark W. Stiles Law Library for Pickup June 1, 2018 using 113 days.

Accumulated total is 344 days, by Petitioner's calculations, leaving 21 days remaining as of June 1, 2018. (not including 90 days for filing Writ of Cert.)

Petitioner only goes into this detail because Trial Court (Stamped) his initial Application 17 days after mailing. Furthermore, Petitioner has sent all other mail to the Trial Court Certified, that were not filed the day recieved.   Petitioners finding of facts was mailed certified on March 29 2017 signed for by the Court April 3, 2017, and yet was filed as May, 3 2017

My appologizes to the Court for this possibly not needed detail.

---

[1] The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), as contained in 28 U.S.C. § 2244(d), provides in part that:

    (1)    A one-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –

        (A)    the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

        (B)    the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

        (C)    the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

        (D)    the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

    (2)    The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

Wherefore, petitioner prays that the Court grant him the relief to which he may be entitled.

_____ *N/A*
Signature of Attorney (if any)

_____

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct and that this Petition for a Writ of Habeas Corpus was placed in the prison mailing system on

_____*June 01    2018*_____ (month, day, year).

Executed (signed) on _*May 31  2018*_ (date).

_____ *Marshall Lovell*
Signature of Petitioner (required)

Petitioner's current address: *Stiles  Unit  3060  Fm  3514  Beaumont  TX  77705*
_____

## ATTACHMENT "A"

Sec: 20

A.  GROUND ONE: Texas Courts decision to deny relief is an unreasonable
    determination of facts ORis "contrary to" or an unreasonable application
    of Clearly established Federal Law as determined by the Supreme Court of
    the United States 28 U.S.C. § 2254(d)(1)(d)(2) When:

    Plea was not knowing,Intelligent, or voluntary; as an "Open" plea when,
    plea offer unreasonably rejected by Counsel in violation of Amendments
    5,6, and 14 of the United States Constitution

    Supporting facts: Petitioner was coerced into his plea after Trial Counsel
    failed to suppress evidence, without the knowledge of evidence favorable
    to defendant that was withheld by the court. Petitioner offered a ten
    year probation term as his ex-wife had negotiated, only to be refused.
    Trial Counsel insisting on Petitioner to take an "Open" Plea of guilty so
    that he would be eligible for an Appeal, since the "Warrant was no good
    and the Appeals Court will overturn his conviction".

    See Memorandum at pg 1-2


B.  GROUND TWO: Texas Courts decision to deny relief is an unreasonable deter-
    mination of facts, or is "contrary to" or an unreasonable application
    of clearly established Federal Law as determined by the Supreme Court of
    the United States 28 U.S.C. § 2254(d)(1)(d)(2) When:

    Aggregate Lab analysis and Hearing not conducted on evidence seized from
    property other than Petitioner's When State purports it was, in violation
    of Amendments 4, 5, 6, and 14 of the United States Constitution.

    Supporting Facts: State testifies to retreving over 4000 grams of L-Meth
    Lab Analysis provided Post Trial shows various items  "contains" traces
    of Meth. No item is exculsivly meth. A Aggregate Lab analysis and hearing
    was neede to decern "Actual" meth from poisionus by products. Mem at 3-5


C.  GROUND THREE: Texas Courts decision to deny relief is an unreasonable
    determination of the facts, or is "contrary to" or an unreasonable appli-
    cation of clearly established Federal Law as determined by the Supreme
    Court of the United States 28 U.S.C. § 2254(d)(1)(d)(2) When:

    Illegal detention and arrest results in Illegal Search and Seizure, In
    Violation of Amendments 4, 5, 6, and 14 of United States Constitution.

    Ground tied to Ineffective Assistance of Counsel and Ground 9.

    Supporting Facts: Anonymous tip led officer to Petitioner's residence,
    where he was handcuffed and detained,while Police searched. After arrival
    of Search Warrant, Officers expanded their search to a wooded area on
    another persons property seizing multiple items, charging Petitioner with
    possession, when no probable cause had been shown or displayed. (22749)
    See Memorandum at 6-8
    In cause 22709--Petitioner had not been on his property for 6 months.
    Police frequently came to residence looking for Petitioner on a C-E Warrant

C;    GROUND THREE: Supporting facts cont.

issued as a result of previous search. Police discovered Petitioner and
his wife had a 12 year old daughter. Police this time, forced there way
into the residence without any confirmation by a reliable source that he
had been there. Police Re-searched residence, this time without a warrant
and went back into the wooded area seizing multiple items. Search result
in arrest of Petitioner's wife and 21 year old son. Det. Lima expanded
this charge to defendant, despite Det. Lima states:"He was never there"
See Memorandum 9-11

D:    GROUND FOUR: Texas Courts decision to deny relief is an unreasonable
determination of the facts, or is "contrary to" or an unreasonable appli-
cation of clearly established Federal Law as determined by the Supreme
Court of the United States 28 U.S.C. § 2254(d)(1)(d)(2). When:

•    "Brady" type violation by investigative agencies and the Court for
withholding favorable evidence from the defendant, violating Amendments
5, 6, and 14 of the United States Constitution.

•    Supporting Facts: Officer that arrested, searched, and investigated, did
not properly file with the COurt the Return from Search on June 29, 2012
nor evidence log that was "allegedly" attached from both searche(s).
Det. Lima (officer) also had in his possession at suppression hearing
the "Original" Five page Warrant, signed in TWO (2) different colors of
ink, with 2 different Exhibit "A"s-((Probable cause Affidavit(s)) from
cause 22749 without staple holes in warrant indicating a return had never
been attached. Copies of "Unexecuted Return", Copies of Crime stoppers Tip
and both the White and Yellow copies of Evidence Log, When State and
Federal Law dictate inventory of seized items is to be given to person/
place where searched. Trial Judge refuses copies to Defendant or Defense
Counsel. See Memorandum at 12-15.

E:    GROUND FIVE: Texas Courts decision to deny relief is an unreasonable
determination of the facts, or is "contrary to" or an unreasonable appli-
cation of clearly established Federal Law as determined by the Supreme
Court of the United States 28 U.S.C. § 2254(d)(1)(d)(2) When:

•    Ineffective assistance of Trial COunsel occurs, when he or she provide
deficient and unreasonable effective assistance to the client. This
violated Petitioners rights under Amendment 6, and 14 of the United States
Constitution.

•    Supporting Facts: Trial Counsel neglected to perform investigation,
relying on States, not challenging evidence seized that was not on the
warrant nor seizure taking place on property owned by someone other than
Petitioner, and failed to require State to prove "Conduct of Possession"
since search address differed from seizure adddress.

•    Counsel also failed to secure evidence withheld by State and Court, and
pursue Aggregate Lab Analysis and hearing when State alleges over 4000
grams of Liquid Meth (L-Meth). Completely fails to address cause 22709 in
any issue before the Court. See Memorandum 16-21

GROUND FIVE: Supporting Facts cont.

- Counsel knowing of his clients Head trauma tell the Court his client is competent Memorandum at 30.

- Counsel ignored 22709 failing to challenge as Double Jeopardy when State conceded that "all three were second degree felony cases steming from the same set of fact circumstances that led to the indictments in the two cases before the Court." This is also supported by evidence Log Sl201616 that shows what items were left behind on seizure June 29, 2012. mem at 21

- At Sentencing, Trial Counsel failed to object to admission of evidence that is protected by Petitioners 1st Amendment Right in order for State to enhance Petitioner's sentence. Memorandum at 24-26

- On Procedural issues: Trial Counsel failed to file a timely Motion to Recuse Judge Jones, a Former ADA with a conflicting bias towards defendant for cases in which she was defeated. Memorandum at 23

- And for Motions to suppress evidence in case at bar, that Judge Jones denies.

- Finally, Trial Counsel Did Not appear with his client at Pre-Sentencing Hearing, Leaving his client unable to respond to Questions asked of him. Memorandum at 24.

F: GROUND SIX: State Courts decision to deny relief is an unreasonable determination of the facts, or is "contrary to" or an unreasonable application of clearly established Federal Law as determined by the Supreme Court of the United States 28 U.S.C. § 2254(d)(1)(d)(2) When:

- Ineffective Assistance opf Appellate Counsel occurs when he provides deficient and unreasonable effective assistance, violating Amendment 6, and 14 of the United States Constitution.

- Appellate Counsel failed to investigate and address All issues from Illegal Search and Seizure in Cause 22749, not addressing the warrant was signed in 2 different colors of ink, and that items seized were on property of another person and Satate fails to "prove possession"

- Appellate Counsel fails to address the procedural issues shown in Ground Five above ibid.

- Finally Appellate Counsel files Appeal Brief 22709 that MIRRORS 22749 word for word, with the exception of page 6 (Statement of facts) See Memorandum at 27-28.

G:   GROUND SEVEN: State Courts decision to deny reliefis an unreasonable determination of the facts, or is "contrary to" or an unreasonable application of clearly established Federal Law as determined by the Supreme Court of the United States. 28 U.S.C. § 2254(d)(1)(d)(2) When:

- Trial Counsel fails to request Competency Hearing, with known Medical issues. Violating Petitioner's Due Process rights guaranteed by the 5th 6th, and 14th Amendments of the United States Constitution Right to a Fair and Impartial Trial.

GROUND SEVEN, Supporting Facts: Trial Counsel does not request a hearing, telling his client he isn't entitled to one. Counsel when asked by the Court simply tells the Judge he is Competent, after known injury from motorcycle accident is brought to the Courts attention, regardless that Petitioner had just started recieving treatment. mem at 29-30

H:    GROUND EIGHT: State Courts decision to deny relief is an unreasonable determination of the facts, or is "contrary to" or an unreasonable application of clearly established Federal Law as determined by the Supreme Court of the United States 28 U.S.C. § 2254(d)(1)(d)(2) When:

  •  State Charges Defendant twice on the same evidence in violation of the 5th Amenments "Double Jeopardy" clause of the United States Constitution

  •  Search on June 29, 2012 cause 22749--Evidence Log shows multiple items "left at scene" which were on property other than Petitioner's. Officers then on Jan. 12, 2013 Re-Search the same property Without a Warrant, And State never proves Possession or control of this property. MEM. at 31-32

I:    GROUND NINE: State Courts decision to deny relief is an unreasonable determination of the facts, or is "contrary to" or an unreasonable application of clearly established Federal Law as determined by the Supreme Court of the United States 28 U.S.C. § 2254(d)(1)(d)(2). When:

  •  Judical Bias occurs during suppression hearing of search warrant in cause 22749, violating Amendments 4,5,6, and 14 of the United States Constitution

  •  Petition shows Judge signing warrant was NOT Neutral and Detached, and upon discovery of multiple probable cause affidavits, Judge Coker doesn't recall which one she relied upon to issue warrant. And All parties agree the probable cause affidavit filed with the Court is clearly missing probable cause. Memorandum at 33-36

  •  Officer Smith who presented the warrant had no knowledge of events and doesnt recall swearing to the warrants truthfullness, since Judge Coker Never refused to sign warrants for him, Memorandum at 38-39

  •  Judge Coker, that signed the warrant is forced to resign from the bench after a year long probe into witness and Jury Tampering, that occured during the time frame of Petitioner's own case(s). Memorandum at 35.

  This Ground is tied to Ground Three and Ineffective Assistance of Counsel

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT, TEXAS DIVISION

| | | |
|---|---|---|
| MARSHALL SHANE LOVELL (Petitioner) | § § § | STATE OF TEXAS HABEAS CORPUS CAUSE NO. 27,449A and 22709A |
| Vs | § § | CIVIL ACTION NO. |
| LORIE DAVIS, Director, TDCJ-CID (Respondent) | § § | ——————————— |

FROM THE 411th DISTRICT COURT
POLK COUNTY, TEXAS
CAUSE NO. 22749 and 22709

FROM THE FIRST (1st) JUDICAL DISTRICT
COURT OF APPEALS – HOUSTON, TEXAS
CAUSE NO: 01-15-00045-CR
01-15-00046-CR

PETITION FOR DISCRETIONARY REVIEW
CAUSE NO: PD-0065-16
PD-0066-16

TEXAS COURT OF CRIMINAL APPEALS
CAUSE NO: WR-87,418-02
WR-87,418-03

MEMORANDUM OF LAW IN SUPPORT
OF
MARSHALL SHANE LOVELL
PETITION FOR WRIT OF HABEAS CORPUS
(Pursuant to 28 U.S.C. § 2241 and § 2254)

PETITIONER'S MEMORANDUM OF LAW IN SUPPORT OF
PETITION FOR WRIT OF HABEAS CORPUS
(Pursuant to 28 U.S.C. § 2241 and § 2254)

TO THE HONORABLE JUDGE OF THE COURT:

Marshall Shane Lovell, (Herein "Petitioner") and pursuant to the provisions of 28 U.S.C. § 2241 and §2254 presents, this his petition for post conviction application for writ of Habeas Corpus nad would show this Honorable Court the following claims of Federal Statute and Constitutional violations in his conviction on Cause No. 22749 and 22709 from the 411th District Court, Polk County, Texas.

## JURISDICTION

A Court has jurisdiction over the subject matter and parties in the district where petitioner was originally convicted in State Court or was held in custody at the time of filing the petition. See Wadsworth v Johnson, 235 F.3d 957, 961 (5th Cir 2000)(Quoting § 2241(d)). Petitioner's conviction occurred in Polk County, Texas, and is currently being held in Jefferson County, Texas, thus petition is properly filed in Eastern District of Texas, Beaumont Division.

## STATEMENT TO THE COURT

Petitioner moves this Honorable Federal Court to review this pleading under the standard established by the United States Supreme Court in: Haines v Kerner, 404 U.S. 519 (1972); Hulsey v Owen, 63 F.3d 354, 355 n1. (5th Cir 1995), In Hanies, the Court aptly stated:

> "...pro se pleadings are to be construed liberally and held to less stringent standards than formal pleadings drafted by Lawyers, if the Court can reasonably read claims to state a valid cause of action upon which litigants could prevail, it should do so despite litigants failure to cite proper authority, confusion of legal theories, poor grammer and sentence construction of a Litigant's unfamiliarity with pleading requirements."

i

## TABLE OF CONTENTS AND INDEX OF EXHIBITS AND ABBREVIATIONS

Jurisdiction and Statement to the Court ................................ i

Table of Contents and Index of Exhibits and Abbreviations ............ ii

Table of Authorities ................................................. iii

Constitutional Statutes, Rules, and Provisions ....................... v

Statement of Facts ................................................... vi

Statement Regarding Evidentiary Hearing .............................. viii

Procedural History ................................................... ix

U.S.C. 28 § 2254 Standard of Review .................................. ix

Basis for Review ..................................................... xi

Grounds Presented:

    1) IAC–Plea Offer Unreasonably Rejected by Counsel before the Court   1

    2) IAC–Evidence used without Aggregate Lab Analysis or Hearing   3

    3) Search and Seizure Illegal–Tied to Ground 9 and IAC   6

    4) Brady Violation by Investigative Agencies   12

    5) Ineffective Assistance of Trial Counsel   16

    6) Ineffective Assistance of Appellate Counsel   27

    7) IAC–Competency Hearing not Conducted   29

    8) Double Jeopardy   31

    9) Judical Bias on the Facially Invalid Warrant   33

Conclusion and Prayer ................................................ 41

Exhibit "Al" – – E-mail from Polk County Detective
      "A2"–"A4" Newspaper Articles
      "A5" – – Online History of Judge Coker
      "B" – – Texas State Commission of Judical Review (Judge Coker)
      "C" – – Evidence Log Sl201616 (from June 29,2012 seizure)

Abbreviations:

| | | | |
|---|---|---|---|
| ADA | = Assistant District Attorney | SOA | = States Original Answer |
| Art. | = Article | TCCP | = Texas Code Criminal Procedure |
| Bf. | = Brief | THSC | = Texas Health and Saftey Code |
| C-E | = Child Endangerment | | |
| CR | = Clerks Records | | |
| CoA | = Court of Appeals | | |
| FOF | = Finding of Facts | | |
| IAC | = Ineffective Assistance of Counsel | | |
| mem. | = Memorandum | | |
| op. | = opinion | | |
| PSCO | = Polk County Sheriff Officer | | |
| RR | = Reporters Reord | | |
| SHC.mem | = State Habeas Corpus Memorandum | | |
| SHC.app | = State Habeas Corpus Application | | |

## TABLE OF AUTHORITIES

Supreme Court                                                        page

Anders v California, 386 U.S. 738 (1967)                              30

Bell v Cone, 535 U.S. 685 (2002)                                     17

Brady v Maryland, 373 U.S. 83 (1963)              1,12,13,14,15,19

Brady v U.S., 297 U.S. 742 (1970)                                    2

Brecht v Abrahamson, 507 U.S. 619                                   13

Brown v Illinois, 95 S.Ct. 2254 (1975)                             6,10

Coleman  v Alabama, 90 S.Ct. 1999                                   22

Coolidge v New Hampshire, 91 S.Ct. 2022 (1971)           viii,33,35

Cooper v Oklahoma, 116 S.Ct. 1373 (1996)                         29,30

Dawson v Deleware, 112 S.Ct. 1093 (1992)                           25

Early v Packer, 573 U.S. 3 (2000)                                    x

Estelle v Mc Guire, 502 U.S. 62 112 S.Ct. 495 (1991)               15

Evitts v Lucey, 469 U.S. 387 (1985)                        11,17,27,28

Fontaine v U.S., 411 U.S. 213 (1973)                                 1

Fugate v New Mexico, 470 U.S. 984 105 S.Ct. 1858 (1985)             32

Grady v Corbin, 110 S.Ct. 2084 (1990)                               32

Groiu v Ramerez, 124 S.Ct. 1284 (2004)                             8,23

Haines v Kerner, 404 U.S. 519 (1972)                                 i

Harrington v Richter, 131 S.Ct. 770 (2011)                        ix,x

Illinois v Vitale, 447 U.S. 410 100 S.Ct. 2260 (1980)              32

In re Winship, 397 U.S. 362 90 S.Ct. 1068 (1970)                 3,6,10

Knapp v Texas, 123 S.Ct. 1843 (2003)                                 7

Kyles v Whitley, 514 U.S. 419 (1995)               1,12,13,14,26

Lafler v Cooper, 132 S.Ct. 1375 (2012)                          1,2,15

Luis E Melendez-Diaz v Massachustts, 557 U.S. 305 129 S.Ct. 2527 (2009)    5

Mapp v Ohio, 81 S.Ct. 1684 (1961)                                  6,9

Minnesota v Carter, 119 S.Ct. 469 (1998)                      33,36,40

Missouri v Frye, 132 S.Ct. 1399 (2012)                            1,15

Pate v Robinson, 383 U.S. 375 86 S.Ct. 836 (1966)                29,30

Rompilla v Beard, 125 S.Ct. 2450                                    19

Strickland v Washington, 466 U.S. 668 104 S.Ct. 2052 (1984)  2,10,11,15,16,17,18
                                          19,20,21,23,24,25,26,27,30,40

Strickler v Greene, 527 U.S. 263 119 S.Ct. 1936 (1999)           14,38

Texas v Johnson, 109 S.Ct. 2533 (1989)                             24

Thigpen v Roberts, 468 U.S. 27 104 S.Ct. 2916 (1984)               32

TABLE OF AUTHORITIES cont.

Supreme Court                                                          page

U.S. v Agurs, 427 U.S. 97                                              13

U.S. v Babley, 473 U.S. 667 (1985)                                    12,13,19

U.S. v Bailey, 444 U.S. 394 (1980)                                    1

U.S. v Leon, 468 U.S. 897 (1984)                                      3,35

Wiggins v Smith, 539 U.S. 510 (2003)        16,17,18,19,21,23,29

Williams v Taylor, 120 S.Ct. 1495 (2000)          x,11,21,23,26

Youngblood v Virgina, 547 U.S. 867 (2006)                            2

Circuit Courts

Anderson v Johnson, 338 F.3d 382 (5th Cir 2003)                      20,23

Beltran v Cockrell, 294 F.3d 730 (5th Cir 2002)                     20

Boyd v Estelle, 661 F.2d 388 (5th Cir 1981)                         16

Bryant v Scott, 28 F.3d 1411 (5th Cir 1994)                         19

Dowthitt v Johnson, 230 F.3d 733 (5th Cir 2000)                     x

Earp v Oronski, 431 F.3d 1158 (9th Cir 2005)                       viii,ix

Guidry v Dretke, 429 F.3d 159 (5th Cir 2005)                       viii,ix

Hulsey v Owen, 63 F.3d 354 n.1. (5th Cir 1995)                      i

James v Cain, 56 F.3d 662 (5th Cir 1995)                            16

Jones v Cain, 600 F.3d 527 (5th Cir 2010)                           2

Love v Morton, 112 F.3d 131 (3rd Cir 1997)                        viii

Murry v Maggio, 736 F.2d 279 (5th Cir 1984)                        16

Richards v Quarterman, 566 F.3d 553 (5th Cir 2009)                19

Rubio v Estelle, 689 F.2d 533 (5th Cir 1982)                       16

Strickland v Washington, 693 F.2d 1243 (5th/11th Cir 1982)        2,10

U.S. v Glover, 97 F.3d 1345 (10th Cir 1996)                         5

U.S. v Iberra, 948 F.2d 903 (5th Cir 1991)                          6

U.S. v Jennings, 945 F.2d 129 (6th Cir 1991)                        4

U.S. v Kimbrough, 69 F.3d 753 (5th Cir 1995)                        9

U.S. v Levay, 76 F.3d 671 (5th Cir 1995)                            3

U.S. v Mimms, 43 F.3d 217 (5th Cir 1995)                            5

U.S. v Serabia, 661 F.3d 225 (5th Cir 2010)                        32

U.S. v Towe, 26 F.3d 614 (5th Cir 1994)                             5

Wadsworth v Johnson, 235 F.3d 957 (5th Cir 2000)                   i

<u>TABLE OF AUTHORITIES cont.</u>

District Courts                                                      page

<u>Sanders v City of Houston</u>, 543 F.supp 694                             6


State Courts

<u>Amores v State</u>, 816 S.W.2d 407 (Tex Crim App (enbanc) 1991)          6

<u>Castillo v State</u>, 867 S.W. 2d 817 (Tex Crim App 1994)             8,10

<u>Derichwieler v State</u>, 348 S.W.3d 906 (Tex Crim App 2011)           6

<u>Little v State</u>, 991 S.W.2d 864 (Tex Crim App 1996)                 15

<u>Murry v State</u>, 864 S.W.2d 111 (Tex Crim App)                      3,4

<u>Phenix v State</u>, 488 S.W. 2d 759 (Tex Crim App 1972)                7

<u>Wall v State</u>, 887 S.W.2d 686 (Tex Crim App)                       3,4

<u>CONSTITUTIONAL PROVISIONS, STATUTES AND RULES</u>

United States Constitution

    Amendment 1   (Freedom of speech/expression)              24,25
    Amendment 4   (Search and Seizure)             33,39,1,3,6,7,9,11
    Amendment 5   (Fair Trial/Due Process) 1,3,5,6,7,10,12,14,16,23,27,29,31,38
    Amendment 6   (Effective Counsel/Compulsory Process) 1,3,6,11,12,16,18,21,
                                       22,27,29,30,33,38
   Amendment 14 (Due Process/Effective Counsel) 1,3,5,6,7,10,12,14,16,22,27,29
                                       33,38

United States Code 28 § 2254                              ix,27,38
                      (d)                               x
                      (d)(1) "contrary to" x,xi,8,10,11,12,20,25,26,32,35
                                       36,40
                      (d)(2) "unreasonable determination" x,xi,1,4,10,36
                                     40
                      (e)(1)                            xi
                      (e)(2)                          viii

Comprehensive Drug and Abuse Prevention and Control Act of 1970 §§ 401(a)(1) 5
                                     406

Fed. Rule 4(c)(3)(A)                                      7,36
       41(f)(1)(C)                                     37

U.S.S.G. App.C Amend 484                                   3
    2D1.1                                               5

Texas Health and Saftey Code §571.003(14) "mental disease or defect"   30
                          (15) "mental health professional"   30
                          (18) "physician"                   30

Texas Code Criminal Procedure Art. 46B.003(b)             29
                        18.06(b)                       37
                        11.07                          ix

Texas Disciplinary Rule of Professional Conduct 309(d)    15

Texas Government Code 33.032(h)                            34

## STATEMENT OF FACTS

Petitioner, Marshall Shane Lovell was charged with 2 counts of possession with intent to deliver controlled substance. After coercion and erroneous advice by trial counsel, Petitioner Pled Guilty before the Honorable 411th Judical District Court. Subsequently sentenced to 50 years confinement at TDCJ on each count and a 2000.00 dollar fine on each count. (RR4 89)

Warrant Issuance:

Polk County Sheriff's Office received an anonymous tip. Det. Lima encroached the Lovell property at 648 Hershcap Ln. Livingston TX. Petitioner met Det. Lima, who requested to search Petitioner's Property, which was denied. Det. Lima detains Petitioner by placing him in handcuffs, sitting him in the driveway. (RR2 28).

Det. Lima went to his vehicle, (RR2 28:18,19) and prepared the warrant on his lap top computer, sending it wirelessly to Polk County Sheriff's Office printer. (RR2 29:7). Det. Lima then called Officer Howard Smith at the office and asked him to retrive the warrant from printer and take to the Judge for her signature. (RR2 29:10-21).

Officer Smith testified he does not recall whether he read the warrant before taking it to the Judge. (RR2 52:13,15). Smith also testifies, he could not be 100 percent sure the Judge read it, and could not convey to the Judge anything on the warrant since he had no knowledge or evidence of what went on at the scene. (RR2 55:23-56:9).

Incredibly, Judge Coker signed authorization to execute such search warr-ant without a "Sworn to; Probable Cause Affidavit", by any Polk County Sheriff Officer returning signed warrant pages to Officer Smith. (RR2 15). And yet, by testimony Judge Coker re-examines the Probable Cause Affidavit (Exhibit A) and states: "it does not appear to be complete." (RR2 18:14-15).

Thereafter, Officer Smith delivers warrant to Det. Lima as requested to the Lovell residence without showing, nor giving Petitioner a copy (RR2 30-31). Det. Lima just "stuck" the warrant "in (his) vehicle" without inspection for signature, page count, or accuracy. (RR2 37).

**Warrant Execution:**

Det. Lima conducts a preliminary search of the Lovell Property prior to receipt of such warrant. Officer Smith arrived at the scene with warrant at 3pm, and "did not assist with the search", remaining "the whole time" (RR2 56:18)

Petitioner was transported to Polk County Jail shortly after arrival of Officer Smith, justified by a "Newly prepared" Probable Cause affidavit, auth-ord by Det. Lima, and witness by Officer Berry of search findings as result of illegal exploratory search conducted prior to arrival of said search warrant. See (CR 22749 Vol. 1 pg 10 and 11). Det. Lima then, expands his search area to a wooded area on adjacent property – a different address – outside purview of search warrant.

State implies to have recovered over 3000 grams of "Liquid Methamphetamine" from a "Working Meth Lab" in this area (RR4 8; 64:18) But yet, Det. Lima testifies he discovered an "INACTIVE Meth Lab" seizing precursors for manufacture of methamphetamine. (RR4 63:11-12).

State offered No evidence to demonstrate that Petitioner had any interest in or rights to such adjacent property; Although in State's Answer it holds: "applicant has no standing to contest the search of said property" when it "was not the property of the applicant." See (States Original Answer-SOA at 6) Nevertheless, charges Petitioner with possession of controlled substances seized from this property.

**Search and Seizure:**

An Inventory list of all property seized from Both properties was written and withheld from defense. The Record reflects this and other exculpatory evi-dence is Denied to the Defense by the Trial Judge, even after Prosecutor Anderson made efforts to secure copies for State and Defense. (RR2 43:6-10) and (RR2 49:7-11).

**Plea:**

On an Open Plea, at erroneous advice of Trial Counsel, Mr. Davis, (RR3 8:15-19). Applicant contends he did not understand or comprehend the ramifica-tions. Petitioner contends his Plea was not Intelligently, Knowingly, or voluntary. Nor did he understand what evidence was against him since the State effectively withheld this evidence from him and his counsel, over counsels continued objections.

## STATEMENT REQUESTING EVIDENTIARY HEARING

Petitioner believs that under 28 U.S.C. § 2254(e)(2), an evidentiary hearing would assist the court in discerning applicable case law and pertinent facts. See **Love v Morton**, 112 F.3d 131, 136 (3rd Cir 1997).

Petitioner's Fourth and Fourteeth Amendment rights were violated when the State Court, contrary to, United States Supreme Court in **Coolidge v New Hampshire,** did not suppress the search warrant issued by a Judge who was Not "Neutral and Detached". And further that the search warrant affidavit was not sworn to and absent probable cause. 91 S.Ct. 2022 (1971). Furthermore the issuing Judge, Elizabeth Coker recently voluntarily removed herself in lieu of disiplinary action by the Judical Counsel for witness tampering, among other allegations with and thru her accomplice's, who among them is Judge Kaycee Jones current Judge hearing case at bar (See Exibit "B"). Among other things, Judge Jones refused to recuse herself as a biased party, who as a prosecutor had a recent failed prosecution against Petitioner, (See CR 22749 vol 1 pg 39-41). These actions additionaly violated Petitioner's 5th Amendment right to a Fair Trial and an Evidentiary hearing by a neutral Court is in order to find Truth.

Under the AEDPA, a Federal Court is not required to order a hearing where the petitioner failed to develop the facts in State Court. In such cases, the Federal Court accords a presumption of correctness to the facts found by the State Court and need not hold any evidentiary hearing unless those facts are rebutted by clear and convincing evidence. On the other hand, NO ADEPA deference is due where the State has made an unreasonable determination of the facts: AND: Where a State Court makes evidentiary findings without holding a hearing and giving petitioner an opportunity to present evidnece, such findings clearly result in an unreasonable determination of the facts. **Guidry v Dretke**, 429 F.3d 159 (5th Cir 2005), clearly mirrors case at bar.

In sum, An evidentiary hearing is required under AEDPA and an Appellate Court will reman for a hearing if the District Court rules without granting one where the petitioner established a colorable claim for relief and has never been accorded a State or Federal hearing on his claim. **Earp v Oronski** 431 F.3d 1158, 1167 (9th Cir 2005).

Here, Petitioner requested an evidentiary hearing at every level of the State Habeas proceedings, the Courts ruled without Granting an evid hearing despite petitioners colorable showing of bias displayed by Trial Court Judge.

Before this Honorable Court can make any credibility determinations on facts alleged in the petition and supporting appendices and exhibits; and/or any controverted facts found by the State Court while denying a request for an evidentiary hearing necessarily result from an unreasonable determination of the facts, and hence are not entitled to any presumption of correctness. **Earp**, 431 F.3d at 1167; **Guidry v Dretke**, 429 F.3d 159 (5th Cir 2005). [Where the State Courts legal error infects the fact finding process, the resulting factual determination will be unreasonable and no presumption of correctness can attach to it.]

RESPECTFULLY, PETITIONER IS ENTITLED TO AN EVIDENTIARY HEARING

## PROCEDURAL HISTORY

Initial arrest occurred June 29, 2012 with subsequent re-arrest Jan. 17, 2013. Case transfered from the 258th Judical District to the 411th Judical District of Polk County Texas by Judge Elizabeth Coker on August 5, 2013 in anticipation of her voluntary, permanent, removal from the bench on October 19, 2013, (See Exhibit "B"). Suppression hearing held April 17, 2014, Hearing on Guilt held November 3, 2014, Punishment hearing conducted December 18, 2014. Petitioner was affirmed by 1st Court of Appeals on December 29, 2015. Petition for Discretionary Review timely filed and refused to be heard, Mandate of Final conviction issued June 24, 2016. State Habeas Corpus Article 11.07 timely filed, placing in Stiles Unit Legal Mail depository Feb. 10, 2017. Texas Court of Criminal Appeals denied "...without written order the application for a writ of habeas corpus on the findings of the Trial Court without a hearing." on Feb. 7, 2018.

## U.S.C. 28 § 2254 STANDARD OF REVIEW

### THE ANTI-TERRORISM AND EFFECTIVE DEATH PENALTY ACT OF 1996

The Supreme Court recently had an opportunity to summarize basic principles that have grown out of the Court's many cases interpreting the 1996 Anti-Terrorism and Effective Death Penalty Act. See **Harrington v Richter**, 131 S.Ct. 770, 783-05 (2011). The Court noted, the starting point for any Federal Court in reviewing a State Conviction is 28 U.S.C. § 2254, which states in part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State Court shall not be granted with respect to any claim that was adjucated on the merits in State-

-Court proceeding unless the adjudication of the claim-
 (1) resulted in a decision that was contrary to or involved an
     unreasonable application of clearly established Federal Law,
     as determined by the Supreme Court of the United States. or,
 (2) resulted in a decision that was based on an unreasonable
     determination of the facts in light of the evidence presented in the
     State Court proceeding.

28 U.S.C. § 2254(d), The Court noted "[b]y the terms § 2254(d) bars relitigation
of claims adjudicated on the merits in State Court, subject only to the excep-
tions in §§ 2254(d)(1) and (d)(2). Harrington v Richter, 131 S.Ct. at 784.

 One issue Harrington resolved was "whether § 2254(d) applies when a State
Courts order is unaccompained by an opinion explaining the reasons relief has
been denied." Id. Following all of the Court of Appeals decisions on this
question, Harrington concluded that the defendant due to State Court decisions
under § 2254(d) "Does not require that there be an opinion from the State Court
explaining the Courts reasoning." Id. (Citations ommitted). The Court noted
that it had previously concluded that "A State Court need not cite nor even be
aware of our cases under § 2254(d)." Id. (Citing Early v Packer, 537 U.S. 3, 8
(2002)(per curiam)).

 When there is no explanation with a State Courts decision, the Habeas
petitioner's burden is to show there was no reasonable basis for the State
Court to deny relief." Id. And even when a State Court fails to state which
of the elements in a multi-part claim it found insufficient, deference is
still due to that decision, because "§ 2254(d) applies when a 'Claim',not a
component of one has been adjudicated." Id.

 As Harrington, noted, § 2254(d) permits the granting of Federal Habeas
relief in only three circumstances: (1) when the earlier State's decision
was"contrary to" Federal Law clearly established in the holdings of the
Supreme Court; (2) when the earlier decision "involved an unreasonable
application of" such law; or (3) when the decision "was based on an unreasona-
ble determination of the facts" in light of the record before State Court.
Id. at 785, (citing 28 U.S.C. § 2254(d); Williams v Taylor, 529 U.S. 362, 412
(2000)). The "contrary to" requirement "refers to the holdings, as opposed
to the dictations, of...[Supreme Court's] decisions as of the time of the
relevant State Courts decision." Dowthitt v Johnson, 230 F.3d 733, 740
(5th Cir 2000."

 Under the "Contrary to" clause a Federal Habeas Court may grant the writ-

-if the State Court arrives at a conclusion opposite to that reached by...
[The Supreme Court] on a question of law or if the State Court decides a
case differently than...[The Supreme Court] has on a set of materially
indistinguishable facts. Id., at 740-741. (230 F.3d 733)

Under the "unreasonable application" clause of § 2254(d)(1), a federal
court may grant the writ "if the State Court identifies the correct governing
legal principle for...[The Supreme Court's] decision but unreasonably applies
that principle to the facts of the prisoners case. Id. at 741 (quoting and cit-
ation ommited). The provisions of § 2254(d)(2), which allow the granting of Fed-
eral Habeas relief when the State Court made an unreasonable determination of
the facts," are limited by the terms of the next section of the statute § 2254(e)

This section states that a Federal Court must presume State Court fact
determinations to be correct, though a petitioner can rebut that presumption by
clear and convincing evidence, See U.S.C. § 2254(e)(1). But absent such a
showing the Federal Court must give deference to the State Courts Findings.

## BASIS OF REVIEW

Petitioner's challenging the convictions based on Federal Law and Facts,
that the Judge, Prosecutor's, and Det. Lima violated Rules of Professional
Conduct, in that, committed "Errors of Constitutional Magnatude" throughout
"Critical Stages" of the Judical Process. Petitioner's 4th, 5th, 6th, and 14th
Amendment Rights of the United States Constitution were violated, Including,
Illegal arrest, Search and Seizure, and the right to a "Fair and Impartial"
Trial. Thus rendering Due Process violations of clearly established Federal Law
Petitioner moves to the COurt his Petition for writ of habeas Corpus; 28 U.S.C.
§§ 2241 and 2254, arguing:

1) State of Texas is wrong on both Federal Law and Facts;

2) State of Texas, Prosecutorial Team, including Judge and Detectives,
   abused their discretion and powers;

3) Trial and Appellate Counsel neglected their duties;

4) State of Texas, Courts did not make determinations that "ends of
   Justice" would be served with consideration of the merits of claims,
   where Petitioner has shown, making a colorable showing that State
   violated Petitioner's right to be "Free and secure in their persons
   and places"

GROUND 1 = INEFFECTIVE ASSISTANCE OF COUNSEL

PLEA OFFER UNREASONABLY REJECTED BY COUNSEL
BEFORE THE COURTS.

Petitioner's Counsel incompetently advised Petitioner to reject a favorable plea offer as a result of which Petitioner went to Trial Judge, on a Open Plea, and received a sentence far greater than that presented by the rejected plea offer. This violated Petitioner's Right to Counsel and Due Process of Law, as guaranteed by Amendment's 5, 6, and 14 of the United States Constitution. See **Lafler v Cooper**, 132 S.Ct. 1375 (2012)

## ARGUMENT AND AUTHORITIES

The State Courts decision in denial for relief was contrary to and an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding. When the State alleged that "The Applicant has failed to show how his plea was involuntary in any way". (Soa. at 5).

Petitioner asserts that: 1) Prior to applicants plea, he was led to believe by Polk County Sheriff's officers that both his Wife and Mother were going to be charged with possession if he did not accept responsibility. Applicant, in part, based his plea on the emotional belief that he would save his family from prosecution. Applicants plea was coerced by Polk Cnty. Sheriff officers, Duress and Perjured information led to Applicants Plea. **U.S. v Bailey**, 444 U.S. 394 (1980); **Fontaine v U.S.**, 411 U.S. 213 (1973)(SHC.mem at 1)

2) Applicant's plea was based upon counsel's erroneous advice, **Missouri v Frye**, 132 S.Ct. 1399 (2012). Applicant's Trial Counsel, led him to believe that he was not entitled to the following: A) Independent analysis of State lab results which would have proven that applicant did not possess an "astronomical amount" of Methamphetamine and; B) competency hearing. Furthermore, Applicant's Trial Attorney failed to subject States case to a meaningful adversarial testing before advising his client to "throw himself at the mercy of the Court" See (SHC.mem at 2).

3) Applicant's plea was made without the knowledge of Favorable evidence which was withheld by the State, **Kyles v Whitley**, 514 U.S. 419 (1995); **Brady v Maryland**, 373 U.S. 83 (1963). When the State withholds evidence that is material to the defense a plea cannot be "Knowingly or Intelligently Made". Trial counsel failed to obtain the **Brady** material due to the Courts rulings. (RR2-42:8-10). Thus the information that was not transmitted to the defendant. **Missouri Id.** Had the applicant had the exculpatory evidence, his plea could

1

have been renegotiated. <u>Lafler v Cooper</u>, 132 S.Ct. 1376 (2012). The State fail-
ed to abide by, and Trial Counsel failed to effectively utilize State Evidence
Rules, <u>Jones v Cain</u>, 600 F.3d 527 (5th Cir 2010). Brady material extends to
Impeachment evidence. <u>Youngblood v W. Virginia</u>, 547 U.S. 867 (2006).
(SHC.mem. at 2)

In Addition, Petitioner asserts his plea of guilty was not Knowingly,
Voluntarily or Intelligently made, when counsel for defendant could not provide
"reasonably competent advise" by telling his client; "take the open plea, it
is the only way you can get an appeal and the Appeals Court will overturn the
search warrant" "If you accept a different plea option now you will not be
eligible for an appeal". In <u>Brady v U.S.</u>, the Supreme Court notes; a plea may
not be produced "by actual or threatend physical harm or mental coercion, or
overbearing the will of the defendant." 297 U.S. 742 at 748 (1970).

The record shows that Mr. Lovell was not in "possession" of any newly
discovered "Meth Labs" as the Jan. 2013 charge alledges. Tactics used by the
Polk County Sheriff's office induced Lovell to accept a plea for a crime he
did not commit. Where States witness testifies "he was never there" (RR2

Futhermore, Trial Counsels erroneous advice, that Mr. Lovell was not
entitled to an expert witness or expert analysis of the State lab analysis,
and but for the aforementioned errors, Mr. Lovell would not have pled guilty
to possession of greater than 400 grams and had the aforementioned occurred,
i.e. expert analysis/testing, Mr Lovell would have been eligible for a lighter
sentence, with a possible maximum of only 20 years, whereas , Mr Lovell was
sentenced by the Trial Court to 50 years on each count.

Petitioner requests this Honorable Court find Trial Counsel Ineffective
and deficient in performance, prejudicing his client by statements that were
false and misleading, designed to induce his client to accept a "Open" plea
since Counsel failed to suppress the warrant. Counsels failure to investigate
case as a whole, including property where search was executed, "there can be
no strategic choices that render...investigation unnecessary." <u>Strickland v
Washington</u>, 693 F.2d 1253 (5th Cir 1982). And Counsels shortcomings as is
consistant with <u>Lafler v Cooper</u>, 132 S.Ct.1376 (2012), violating his clients
guaranteed right to have "reasonably effective assistance of counsel"
<u>Strickland v Washington</u>, 104 S.Ct. 2052 (1984). In the alternative, any relief
this Honorable Court deems fit and proper.

GROUND 2 = INEFFECTIVE ASSISTANCE OF COUNSEL

### INEVITABLE DISCOVERY OF EVIDENCE USED WITHOUT AGGREGATE LAB ANALYSIS OR HEARING.

Evidence used to convict Petitioner seized on adjacent property was the product of an Unconstitutional Search and Seizure. This violated Petitioner's Rights, and to Due Process of Law, as guaranteed by Amendments 4, 5, 6, and 14 of the United States Constitution. See **U.S. v Leon**, 468 U.S. 897 (1984); and **In re Winship**, 397 U.S. 362 90 S.Ct. 1068 (1970).

### PERTINENT FACTS

Record reflects, June 29, 2012 Officers allegedly seized over 3000 grams of "Liquid Meth", (Cause 22749 RR4 9:4-14). On Jan. 12, 2013 Officers allegedly seized over 1000 grams of "Liquid Meth", (Cause 22709 RR3 8:25-9:3), both seizures not soley on Petitioner's property, yet charged Petitioner with "Possession" irrespective that seizure(s) occured on Two seperate addresses. Liquid Meth, otherwise known as "L-Meth", is Methamphatemine suspended in solvents, such as coleman fuel. Being a toxic, poisonous mixture that must first be seperated to make Methamphetamine consumable.

### ARGUMENT AND AUTHORITIES

United States Supreme Court recognized the term "Mixture" in U.S.S.G. § 2D.1 and under the guidelines, the weight of mixture cannot include, "Materials that must be seperated from the Controlled Substance before the Controlled Substance can be used." **U.S.S.G. App C. Amend. 484**, (Nov. 1, 1993).

In **U.S. v Levay**, the court concluding "...only the actual weight of the controlled substance is applied in calculating the base offense level, not the aggregate weight of any mixture..." 76 F.3d 671 (5th Cir 1995). (SHC.mem at 6)

The Texas Court of Criminal Appeals was contrary to, in their own cases, When Adulterants and Dilutants constitute part of the weight utilized to increase punishment, the State must prove the following beyond a reasonable doubt. (1) The identity of named illegal substance, (2) that the Adulterants and Dilutants has not affected the chemical activity of the named illegal substance, (3) That the added remainder (Adulterant or Dilutent) was added to the named illegal substance with the intent to increase the bulk or quantity of final product, (4) the weight of the illegal substance, including and Adulterants and Dilutants. **Wall v State**, 878 S.W.2d 686; **Murry v State**, 864 S.W. 2d 111.

3

The State Courts decicion in denial for relief was Contrary to, and an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding. Moreover, why "the State is unsure what this type of (aggregate) hearing is." (Soa at 5). Petitioner "Roadmaps" the Texas Court of Criminal Appeals Standard for weighing chemical mixtures verses Adulterants and Dilutants in <u>Walls</u>, and <u>Murry</u>. (SHC.mem. at 4).

The State failed to prove that the Adulterants and Dilutants has not affected the chemical activity of the Meth. Det. Lima testified "there were precursors to manufacture Meth. Nasal decongestant, batteries, coffee filters...(RR4 pg 63) and "Bubbling, gassing bottles..." (RR4 pg 75).

Regards to Factor #2, it cannot be determined that the chemical mixture of poisonous by products were "Adulterants or Dilutants", or that it has not effected the chemical action of the named illegal substance without expert chemical analysis or testimony thereof. Regards to Factor #3, it cannot be determined that the added remainder of poisonous chemical by products were added to the named illegal substance with the intent to increase the bulk or quantity of Final product without expert chemical analysis and proof thereof.

The State failed to prove any of the four factors in <u>Wall</u>, beyond a reasonable doubt. The State proven the identity of the named substance and weight, including Adulterants or Dilutants, but yet, Not Actual Methamphatam-ine without poisonous by-products included.

Record indicates that both, State and Court assumed that because the contents of the 'bottles' contained a detectable amount of Meth. the entire weight was appropriate for charge and sentencing purposes.

It seems fortuitous and unwarranted by the statute to hold the defendant punishable for the entire weight of the 'mixture' when they could have neit-her produced that amount of Meth. nor Distributed the 'mixture' containing Meth. <u>U.S. v Jennings</u>, 945 F.2d 129 (6th Cir 1991).

State "Lab Analysis Report(s)" Not provided to Petitioner until Sept. 25 2017 as: "States exhibit 'Writ' A", is indicative of not being presented as evidence untill the Habeas proceedings began. Lab Analysis Report(s) are "Affidavits of Findings", and show "Mixture", contains detectable amount of Meth, although does not show Actual weight of Meth vs Poisonous waste.

4

The United States Supreme Court in <u>Luis E Melendez-Diaz v Massachustts</u> held: "...Affidavits of State Labratory Analysis, who did not testify at trial heed to violate accused right under Federal Constitutions Sixth Amendment to confront witnesses against him, because affidavits were testimonial." 557 U.S. 305 129 S.Ct. 2527 (2009).

Case at bar, State utilizes weight of entire "mixture" for charge and sentence computation, analogous to <u>U.S. v Mimms</u>, where Mimms pled guilty in East Texas Court, on advice of counsel without aggregate analysis or hearing A sentence reduction was sought subject to U.S.S.G. 2D1.1 which the Courts adopted that method for calculating the quantity of drugs to be used in determining the offense level and sentence range. 43 F.3d 217 (5th Cir 1995).

Where <u>Mimms</u>, resulted in Vacate, Remand, and sentence reduction, the Court in <u>U.S. v Towe,</u> vacated and remanded after sentence imposed was based on quantity of drug when State included waste and manufacturing materials, contrary to statute. 26 F.3d 614 (5th Cir 1994).

Trial Court committed reversable error in denying Defendant his Due Process Right's by failing to conduct aggregate hearing, while encouraging and accepting a open plea, when evidence was not proven beyond a reasonable doubt while prosecution/State encouraged continued "hiding" of favorable evidence to Defendant in Det. Lima's file case. ante at 1. See (RR2 pg 40-44) (RR2 42:1-25; 43:8-10; 44:1-2). (SHC.mem. at 7)

While failure to request aggregate hearing clearly rests with effective- ness of Counsel, the U.S. District Court for the Northern District of Oklahoma denied relief to <u>Glover</u>, 95-5100 and <u>Wann</u>, 95-5058, Co-Defendants who had been convicted of "Meth" offenses. Upon Appeal, in <u>U.S. v Glover</u>, Circut Judge Henry held: (1) Defendants pleas to charges of conspiracy and aiding in distribution of meth, generally did not obviate need for substance specific proof at sentencing; (2) Counsels failure to raise issue that government had not proven whether offense involved "D-Meth" or "L-Meth" was not within range of reasonable professional competence; and (3) failure was prejudical if the substance was "L-Meth", Reversed and Remanded since even after Defendants were formally convicted, government bore burden of proof and production to show by prepondurance of evidence the type of meth involved in their offense Comprehensive Drug and Abuse Prevention and Control Act of 1970 §§ 401(a)(1) 406. 97 F.3d 1345 (10th Cir 1996).

GROUND 3 = SEARCH AND SEIZURE ILLEGAL

Evidence used to convict Petitioner seized on adjacent property, the product of an Illegal Arrest and Unconstitutional Search and Seizure. This Violated Petitioner's Right to Due Process of Law, as guaranteed by Amendments 4, 5, 6, and 14 of the United States Constitution. See Mapp v Ohio, 81 S.Ct. 1684 (1961); Brown v Illinois, 95 S.Ct. 2254 (1975); In re Winship, 397 U.S.362

## PERTINENT FACTS

Pertinent Facts shown in Statement of Facts, ante at vi. In the 1st part of this claim all record citings refer to cause 22749 unless otherwise noted.

## ARGUMENT AND AUTHORITES

June 29, 2012 at 1pm, PCSO Det. Lima and Officer Vance Berry encroached upon property of Petitioner located at 648 L.C. Hershcap Ln Livingston TX. Petitioner was informed they received a anonymous tip of narcotic use and distribution, (RR4 59:17-61:10). Officers requested consent to search the property which was denied. (RR2 28:2-12). Petitioner was abruptly handcuffed and detained

In Sanders v City of Houston, the Federal District Court noted:

"Police cannot keep a prisoner in detention while they attempt to find further evidence to strengthen their case against him." 543 F.Supp 694.

Petitioner's 4th Amendment Right is Violated when "[He] had a legitimate expectation of privacy in the area" of his home and property. U.S. v Iberra, 948 F.2d 903, 905 (5th Cir 1991), "the burden is on the State to prove the existence of probable cause to justify a warrantless arrest or search." Amores v State, 816 S.W.2d 407, 413 - on en banc 0795-89 (1991).

Texas High Court is of the same opinion 2 decades later in Derichwieler v State

"When an officers suspicion of criminal activity arises from an unidentified caller or witness rather than from the officers own observations, then the information lacks sufficient reliability to provide reasonable suspicion that would justify police intrusion." 348 S.W.3d 906 (2011)

In Knapp v Texas, "an arrest occurs when police conduct would have communicated to a reasonable person that he was not at liberty to ignore police presence and go about his business." 123 S.Ct. 1843 (2003).

Det. Lima typed a warrant out of his patrol vehicle, sending it wireless to the PCSO office while remaining on scene, contacting Officer Smith at the office. Then asked him to take the warrant off the printer to a Judge for signature, then deliver the warrant to Lovell residence. (RR2 29)(SHC.mem at 10)

6

While waiting for officer Smith to bring the warrant, Office Berry and Det. Lima performed a search of the property and dug thru trash and burn pile. Texas' Highest Court held in **Phenix v State**, "General exploratory searches are unreasonable and condemned." 488 S.W.2d (1972). "The doctrine requires that all evidence obtained from the illegal search must be suppressed as well as any evidence derived from the illegally obtained evidence." **Knapp v Texas**, 123 S.Ct. 1843 (2003)

Officer Smith arrived on scene at approx 3pm, gave Det. Lima the alleged warrant whom, without review or presentation to accused, locked the folded papers purporting a warrant in his patrol vehicle, contrary to Fed.R. 4(C)(3)(A) that officer "must show (the warrant) to the defendant" (RR2 30:21-31:3).

Thru fruits of an illegal search, Petitioner was transported to Polk County jail on authority of an affidavit prepared, after the "General Search" and prior to "Warrant Arrival". This "Affidavit Submitted for Probable Cause Determination", indicates: "on the above date and time (6-29-12 at 1500) a search warrant was executed at defendants residence. An Amount of Methamphetamine of more than 200 grams but less than 400 grams was located in the defendants residence and yard." (See CR 22749 vol 1 pg 11)

A second affidavit read: "On the above date and time (6-29-12 at 1500) a narcotic search was executed at defendants residence. Defendant was found to be in possession of Psodherine, lithium batteries, Lye, and coleman fuel, which are chemicals used to manufacture Methamphetamine." (CR 22749 vol 1 pg 10)

Petitioner asserts that his arrest and search of his property prior to arrival of any such warrant, violates his Due Process Rights and the Right to be secure in his property against unreasonable searches and seizures.

The Warrant and its General Execution;

With the validity of the warrant in question due to: (1) Magistrate not "Neutral and Detached"; (2) Multiple versions of Probable Cause Affidavit, (Exhibit "A")(RR2 7:20-8:6; SHC.mem at 12): (3) Affiant not properly sworn an oath to fact.(RR2 54:21-24; SHC.mem at 10); (4) Warrant signed in Two (2) different colors of ink; and (5) Staple holes missing from Warrant, contrary to testimony that return was properly files with inventory attached, (RR2 48)

Petitioner, while addressing the foregoing issues seperatly, thought it pertinent to mention here.

The Search warrant describes the place to be searched as "...a single wide older model mobile home, white with green trim. The Mobile home has an attached add on which is also painted white with green trim." And, in para. Four (4): "IT IS THE BELIEF OF AFFIANT, AND HE HEREBY CHARGES AND ACCUSES THAT: The defendant's listed above has concealed in or on their property methamphetamine and devices used to ingest methamphetamine." (RR5). (no pg#)

Det. Lima expanded his search beyond the scope of warrant, into a wooded area next to Petitioner's property, distinguished by Railroad ties and shrub fence line that marks the edge of Lovells property. (RR4 63:7)

This wooded area of trails is H.O.A. property, accessable to any "Big Thicket Lake Estates" Homeowner or guest by way of Amon Winfrey Ln or L.C. Hershcap Ln. and clearly not subject to a "Plainview Doctrine" due to foilage density. It was alleged in this "Wooded Area" Det. Lima discovered an "Inactive Meth Lab" (RR4 63:12), clearly outside purview of the search warrant, seizing various items (RR4 63:13-19), See Evidence Log S1201616 (Exhibit "C"). State charges Petitioner with "possession" of items found on the adjacent property without proof of ownership or control of same as required by law.

"When accused is not in exclusive possession of the place where contraband is found, in order to convict the accused...State must present additional independent facts and circumstances that affirmatively link accused to the contraband..." **Castillo v State**, 867 S.W.2d 817 (Tex Crim App 1994).

It is reasonable, that this Honorable Court find the search and warrant invalid when: (1) seized items recovered from property other than Petitioner's (2) Officers are confined to search and seize only "Methamphetamine and devices used to ingest methamphetamine", as described in paragraph Four (4) of Search Warrant, as per Warrants Exhibit "A" (probable cause affidavit version 2) Ibid

"Wherefore, affiant ask for issuance of a search warrant that would authorize him to search said supected place and premises for the property described in paragraph four of affidavit for search warrant and seize same" Thereby; eliminating other items seized, See Evidence Log S1201616 (Exhibit C) (3) If probable cause affidavit version 1 (the only version in Courts file) is relied upon, then probable cause cannot exist, making warrant invalid.

Texas Courts decision to deny relief on Petitioner's writ is "contrary to" clearly established federal law. When Det. Lima secured the warrant in his vehicle without review for accuracy. **Grou v Ramerez**, 124 S.Ct. 1284 (2004), and

is unreasonably blantant disregard by executing officers of language of search warrant can transform an otherwise valid search into a general one, thus mandate suppression of all evidence seized during search. **U.S. v Kimbrough**, 69 F.3d 753 (5th Cir 1995); **Mapp v Ohio**, 81 S.Ct. 1684 (1961).

In the Second part of this claim all record citings refer to cause 22709 unless otherwise noted.

**Warrantless Search While Executing Arrest Warrant**

In the second part of this claim, an arrest warrant for Petitioner was issued July xx, 2012 charging "Child Endangerment" (hereinafter "C-E") since a minor was thought to have resided at the searched residence June 29, 2012.

Six months later on Jan. 12, 2013 officers again made a showing at Petitioner's last known address, that officers had visited on multiple occasions since issuance of "C-E" arrest warrant, "but (Petitioner) was never there", as testified to by Det. Lima (RR3 72:14-25)(SHC.mem at 32).

Petitioner's Wife (Tina) was asked for permission to search the house for her husband (Petitioner). Officers were told "he hasn't been here". Officer's forced there way into residence to execute arrest warrant for Petitioner. (RR3 74:1-14).

To (forceably gain entrance to the residence, when it had not been confirmed by a reliable source that (Petitioner) was observed entering or departing residence is presumptively unreasonable and, per se violates the Fourth Amendment of the United States Constitution.)

Det. Lima, in course of searching for Petitioner, with arrest warrant but not a search warrant, retraces his steps from previous search June 29, 2012 opening dresser drawers, discovering a pipe in a small soft sided purse, and precursors, but did not locate Petitioner. (RR3 74:15-22).

Officer's proceed to search adjacent property rediscovering a Meth Lab, See Evidence Log S1201616 for "items left at scene" from June 29, 2012 search, (Exhibit C) (RR3 75:14). Prosecutor Hon, alleges recovery of over 1000 grams of "Liquid Meth", (Meth suspended in Solvents such as coleman fuel). Arresting Petitioner's Wife and Son, charging them with Possession, when subject of arrest warrant was Petitioner on "C-E" charge. Charge 22709 later extended to Petitioner, who had not been in possession of property in over 6 months.

Texas Courts are presumptively unreasonable in denying Petitioner relief when, States Highest Court established: "When accused is not in exclusive possession of the place contraband is found, in order to convict the accused State must present additional independent facts and circumstances that affirmitively link the accused to the contraband and raise reasonable inference that accused...controlled contraband." **Castillo v State**, 867 S.W.2d 817 (T.C.A.1994)

When the charge is "Possession" the proscribed conduct is Possession, that State failed to prove. Moreover, State has not presented any facts that link Petitioner to the contraband or the property it was discovered on, violating Due process right of Petitioner guaranteed by the U.S. Constitution.

Texas Court of Criminal Appeals decision to deny Petitioner's writ is an unreasonable determination of facts in light of evidence presented in State Court proceeding and "contrary to" clearly established Federal Law as determined by the Supreme Court of the United States. When, the Due Process Clause of the 5th and 14th Amendment "Protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." **In re Winship**, 397 U.S. 362 (1970)(SHC.mem 5)

Additionally, Texas Courts decision was further unreasonable and "contrary to" clearly established Federal Law, as determined by the Supreme COurt of the United States; When in **Brown v Illinois**, police made an unlawful entry into Brown's apartment to arrest him, and "that the indirect fruits of an illegal search or arrest should be suppressed when they bear a sufficiently close relationship to the underlying illegality." 95 S.Ct. 2254 (1975).

Alternatively, Trial Counsel prejudice his client, providing deficient performance, falling below an "objective standard of resonableness" failing to investigate illegal search and arrest in both causes. Had he performed a substancive investigation he would have discovered search was outside scope of warrant and evidence siezed must be suppressed. "There can be no strategic choices that renders...an investigation unnecessary" **Strickland**, 693 F.2d at 1252 "Investigation, need not be exhaustive" but must include "an independent examination of the fact circumstances, pleadings and laws involved." Id at 1253.

Having met the "deficient" and "prejudice" prongs of **Strickland v Washington**, Counsel should be found ineffective and relief granted to Petitioner. 466 U.S. 668 104 S.Ct. 2052 (1984).

Not withstanding Trial Counsel's deficiencies, including that of not questioning the validity of a warrant if there was one, in cause 22709. Petitioner was entitled to an Effective Appeal, by reasonably effective counsel. See Trial Courts Certification of Defendants Right of Appeal (CR 22709 Vol 1. pg 37).

Appellate Counsel prejudices his client and is deficient in performance, falling below an objective standard of reasonableness, when he failed to address the issues presented in this 1st part of the claim on the Direct Appeal he filed in cause **22749**, enabling a sucessfull appeal to be presented to the Court

An "Actual or Constructive Denial of Counsel Altogether" occurs when, Appellate Counsel fails to address ANY issues from cause 22709 other than the Date or CR pg number. State implies: in cause 22709 "there was no search warrant..." And "A failure to raise an issue regarding the search and seizure on direct appeal results in forfeiture of the claim." (SOA 22709 at 6).

Appellate Counsel, playing the role, files in cause 22709 a brief that has NONE of the elements, or fact circumstances of the case, including that Petitioner "was never there". The Brief filed is an <u>Exact copy</u> of the one he filed on 22749, with the exception of pg 6 (Statement of the case) where in line 1 "indictment date" differs; and in Paragraph Two (2) "CR" page number differs. All other text in Brief 22709 "<u>Mirrors</u>" <u>Word for Word</u> Brief 22749. Moreover,

Appellate Counsel had opportunity to correct this error when State filed its answer in "Appellee Brief" cause 22709. Counsel's deficient performance not reading Appellee's brief prejudice's his client, to the point of, Petitioner had NO competent assistance of counsel acting as a diligent and concientious advocate. See <u>Evitts v Lucey</u>, 469 U.S. 392 (1985).

While Trial Counsels deficiencies in addressing all issues of 22749 at trial prejudices his client, the lack of investigation is paramount. A through investigation would have shown all the errors of PCSO. Moreover, BOTH Counsels are deficient and unreasonable, Prejudicing Petitioner by not addressing 22709 These deficiencies meet the "unreasonable" and "Prejudical" elements of <u>Strickland</u>, where "Actual or Constructive denial of Counsel Altogether" is legally presumed to result in prejudice. <u>Strickland v Washington</u>, 104 S.Ct at 2067 (1984) Furthermore, State Courts denial of relief is contrary to clearly established Federal Law as determined by the Supreme Court of the United States, when as a whole the cumulative errors of counsel should be considered. <u>Williams v Taylor</u> 120 S.Ct. 1495 at 1515 (2000)

GROUND 4 = "BRADY" VIOLATION BY INVESTIGATIVE AGENCIES

The State failed to disclose "Brady" evidence that was in the possession of Investigative Agencies, to provide the Defense material impeachment evidence to which the State had access. This violated the right of access to evidence, a fair trial, and to due process of law, as guaranteed by Amendment's 5,6, and 14 of the United States Constitution. See **Kyles v Whitley**, 514 U.S. 419 (1995): **U.S. v Bagley**, 473 U.S. 667 (1985).

While this Ground encompasses cause 22749 and cause 22709, all Record citings refer to cause 22749, unless otherwise indicated.

## PERTINENT FACTS

State withheld and failed to disclose, by Order of the Court, favorable evidence discovered in Det. Lima's case files during witness examination at suppression hearing April 17, 2014 (RR2 pg 37-49).

## ARGUMENT AND AUTHORITIES

State Courts denial of relief involved an unreasonable application of the Standard set forth in **Kyles v Whitley**. Kyles was convicted and sentenced by a Louisiana Jury. Following affirmation of his conviction and sentence on Direct Appeal, it was revealed on State collateral review the State had never disclosed certain evidence favorable to Kyles. The situation is analogous evidence of: (1) Inventory/Evidence Log S1201616; (2) Copies of Original warrant signed in 2 different colors of ink; (3) Copies of Crime Stopper tips (4) Copies of "Unexecuted Return" (5) Inventory/Evidence Log and all notes in cause 22709. Aforementioned items discovered in case files of Det. Lima during examination and cross-examination in suppression hearing on April 17, 2014. These items were specifically ordered by the Court to remain in Det. Lima's possession, with copies made for the Court and State. Additionally, Lab results of items seized on July 29, 2012, and Jan. 12 2013 was not disclosed to defendant until September 2017, during Habeas filing with the State.

In **Kyles**, the State and Federal Courts denied relief, and that his conviction was not obtained in violation of **Brady v Maryland**, 373 U.S. 83 (1963) The Supreme Court disagreed, and held:

Under **U.S. v Bagley**, 473 U.S. 667, four aspects of materiality for Brady purposes bear emphasis, First, favorable evidence is material, and Constitutional error results from its suppression by the government,

there is a "reasonable probability" that, had the evidence been disclosed to the defense, result of the proceeding would have been different. Thus, this does not require suppressed evidence would have resulted in acquittal 473 U.S. at 682; U.S. v Agurs, 427 U.S. 97, 112-13. Second, a showing that the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict. Third, contrary to the Fifth Circuit's assumption, once a reviewing court applying Bagley, has found Constitutional error, there is no need for further harmless error review, since Bagley imposes a higher burden standard of Brecht v Abrahamson, 507 U.S. 619,623. Fourth, the State discloser obligation turns on the cumulation effect of all suppressed evidence favorable to the defense, not on the evidence considered item by item. 473 U.S. at 675 n.7. Thus, the prosecutor, who alone can know what is disclosed, must be assigned the responsibility to gauge the likely net effect of all such evidence and make discloser when the point of "reasonable probability" is reached. Kyles, 115 S.Ct. 1555 at 1558 (Syllabus.J.)

Applying the above standard, State Courts decision is both contrary to and involving an unreasonable application of the Supreme Courts authority in the three-prong test for reversable error under Brady and Bagley.

## TESTIMONY

The following testimony reflects (RR2 42:1-20)

[Mr. Davis]: "Your Honor, I'm not seeking to admit these into evidence; but I would like to seek them to be copied and kept as identifiable. I can mark these as seperate exhibits for identification. We would ask copies be made and we can turn the Originals back over to Mr. Lima.

[The Court]: "Are you asking the Court to keep them, or are you asking for copies for yourself?"

[Mr. Davis]: "Well, I'm asking for copies to be kept by the Court Reporter and then copies for myself and MS. Armstrong; and I will mark them individually"

[MS. Armstrong]: "Your Honor, if defense counsel wants copies of something he can always request it through discovery or send me a letter or whatever...they are going to be in the office file. They are not going anywhere."

[Mr. Davis]: "Well, I can do it a different way judge. If we --" (cut off)

[The Clerk]: "Do you want me to copy them before you sticker them?"

[Mr. Davis]: "That's up to however the Court wants to do that."

The Trial Court displays bias to defendant when it states: "I haven't said you can do anything with them..." (RR2 42:22-23). "I'll just order the detective to make sure the case file stays complete and that these document's remain in it" (RR2 43:8-10)

Defense Counsel then requests to mark them as exhibits, the Court responds: "Why?...I'm confused what that has to do with what we're talking about today" (RR2 43:18-19) Mr. Davis responds with: "Well, clearly this one has something to do with what we are talking about. It is certainly evidence, that there was only a two page version in his file. I think that's absolutely relevant for purposes of today. (RR2 43:20-23). The Court responds to Mr. Davis: "...I have ordered him to keep as is in his file." (RR2 44:1-2).

Trial Counsel seeks to keep favorable evidence "Identifiable" and "Unaltered". However, Trial Court denying request, displays bias and becomes "party" to by condoning; willfull, intentional, withholding of evidence from defense, by instructing clerk to make copies for Court and State, and for Det. Lima to put up the evidence and keep it safe. This egregious violation of Due Process gives State the advantage of undisclosed material that was clearly benificial to defense.

The United States Supreme Court has held over 50 years that "suppression by the prosecution of evidence favorable to defendant upon request violates Due Process, where evidence is material either to Guilt or Punishment, Irrespective to good faith or bad faith of prosecutor." Kyles v Whitley, 115 S.Ct. 1555 (1995); Brady v Maryland, 83 S.Ct. 1194 (1963). "The duty to disclose encompasses both impeachment and exculpatory evidence. It is irrelevant whether the suppression...was done willfully or inadvertantly." Strickler v Greene, 527 U.S. 263 at 281,282; 119 S.Ct. 1936 (1999). Petitioner asserts, this should also be applicable to constabulary and Judiciary.

State Courts denial of relief was unreasonable, based upon its finding in 22709: "Since Applicant addresses issues that were discused during motion to suppress..." "State can only assume that the applicant is alledging state withheld Brady evidence in 22749", "...22749 is not the subject of this application the state will not address this issue in this answer." See (States.Original. Answer. (SOA) at 6, 7).

Petitioner, thru defense counsel requested "case files regarding the Jan. 2013 arrest of Mr. Lovell's wife; the on scene notes relating to exhibit log and the "Yellow Copy" of exhibit log of Jan. 2013 (search and arrest) which by rule to go to the defendant..." (SHC.mem at 17) See also pg 18, 19)

State implies in it's Original Answer to the cause 22749 Brady Violation: "The State cannot respond if it is unknown what evidence was allegedly withheld" (SOA at 7). State is "objectively unreasonable" when in "Memorandum in Support of Application for Writ of Habeas Corpus" Petitioner clearly shows what State withheld in pages 17-19. (SHC.mem. at 17-19).

The State Courts decision to deny relief was "contrary to" State Law, and "clearly established Federal Law, as determined by the Supreme Court of the UnitedStates." The Texas High Court in Little v State, 991 S.W.2d 864, utilized a three part test to determine if a prosecutors actions did violate Due Process and asks: "Whether the prosecutor": (1) Failed to disclose evidence; (2) if the evidence was favorable to accused, and; (3) if the evidence is material, meaning there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." Id at 866 following the holdings of; U.S. v Bagley, 473 U.S. 667, 676 (1985).

Thus, an unreasonable determination of the facts in light of the evidence presented in State Court, when: The Court and Prosecutor(s) withhold favorable evidence from accused, and then State's Higher Court overlook their roles:

Rule 3.09(d): TEXAS DISCIPLINARY RULE OF PROFESSIONAL CONDUCT, SPECIAL RESPONSIBILITIES OF A PROSECUTOR. "The prosecutor in a criminal case shall make timely discloser to the defense of All Evidence or Information Known to the prosecutor that tends to negate the guilt of the accused or mitigate the offense, and in connection with sentencing, disclose to the defense AND to the tribunal All unprivileged mitigating information known to the prosecutor"

In Petitioner's case, Judge Jones, ADA Armstrong, DA Hon, all failed by definition of Rule 3.09(d) before, during and after Petitioner trial. This knowingly, and willfull withholding of favorable evidence from defense, so infected the procedures that Petitioner was denied a fair and Impartial Trial.

The United States Supreme Court noted in Estelle v Mc Guire, "Regardless of how a state court applies state -- rules, a Federal Habeas Court has an Indepent duty to determine whether that application violates the Constitution" 502 U.S. 62 at 68 112 S.Ct. 495 (1991). Thereby Petitioner's plea was derived from Counsels erroneous advise without benefit of favorable evidence. See, Missouri v Frye, 132 S.Ct. 1399; Lefler v Cooper, 132 S.Ct. 1376 (2012).

Alternatively, Trial Counsels deficient performance, prejudiced his client by failing to obtain favorable evidence, from State what would have changed outcome of Petitioners Plea. Strickland v Washington, 466 U.S. 668 (1984).

GROUND 5 = INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

Petitioner's Trial Counsel was Ineffective, failing to conduct a reasonable pre-trial investigation. This violated Petitioner's right to Counsel, and to Due Process of law as guaranteed by Amendments 5, 6, and 14 of the United States Constitution. See Strickland v Washington, 466 U.S. 668 (1984); Wiggins v Smith, 539 U.S. 510 (2003). Williams v Taylor, 120 S.Ct. 1495 (2000)

## STANDARD OF REVIEW

In order to succeed on a claim of ineffective assistance of counsel, a habeas corpus petitioner must show that "counsels representation fell below an objective standard of reasonableness," with reasonableness judged under professional norm prevailing at the time counsel rendered assistance. Strickland, 466 U.S. 668 at 688; Wiggins, 539 U.S. 510. The standard requires reviewing court to give great deference to counsel's performance, strongly presuming counsel exercised reasonable professional judgment. Strickland, 466 U.S. at 690. The right to counsel does not require errorless counsel, instead, a criminal defendant is entitled to reasonable effective assistance. Boyd v Estelle, 661 F.2d 388, 389 (5th Cir 1981). See also, Rubio v Estelle, 689 F.2d 533, 535 (5th Cir 1982); Murry v Maggio, 736 F.2d 279 (5th Cir 1984).

Secondly, habeas petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. Petitioner must "affirmatively prove," not just allege, prejudice. Id., at 693. If he fails to prove the prejudice component, the court need not address the question of counsel's performance. Id., at 687. Petitioner who seeks to overturn his conviction on the ground of ineffective assistance of counsel must prove his entitlement to relief by the preponderance of the evidence. James v Cain, 56 F.3d 662, 667 (5th Cir 1995).

### Controlling Legal Principles:

Ineffective Assistance of Counsel Claims and the Duty to Investigate

The general principle which apply to Petitioner's claim that he received constitutionally inadequate representation are well settled, As stated above in Strickland and Wiggins. At the same time a defendant has the right to the effective assistance of counsel, at trial and appeal, and thus is entitled to the

16

reasonably competent assistance of an attorney acting as his diligent and concientious advocate. See Evitts v Lucey, 469 U.S. 387 (1985).

With respect to the question of what constitutes an "objective standard of reasonableness" for attorney performance, the U.S. Supreme Court has declined to articulate specific guidelines for appropriate attorney conduct, and instead has emphasized that "the power measure of attorney performance remains simply reasonableness under prevailing professional norms." Wiggins v Smith, 539 U.S. 510. Accordingly, before counsel undertakes to act, or not to act, counsel must make a rational and informed decision on strategy and tactics founded upon adequate investigation and preparations. Hence, although a court must presume that counsel's conduct falls within the "wide range of reasonable professional assistance", see Bell v Cone, 535 U.S.685, 702 (2002), counsel's alleged tactical decisions must be subjected to "meaningful scrutiny," and must be "informed", so that before counsel acts, he or she "will make a rational and informed decision on strategy and tactics founded on adequate investigation and preparation."

In Strickland, the Supreme Court emphasized that "tactical" decisions, although entitled to a heavy measure of deference if undertaken following a reasonable investigation are only as reasonable as the investigation on which they are base:

> Strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonably precisely to the extent that reasonable professional judgments support the limitations on investigations or to make reasonable decision that makes particular decision not to investigate . In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgment. Strickland, 466 U.S. at 690-691.

In Wiggins v Smith, the Supreme Court applied this basic principle in expressly determining whether a lawyer's pre-trial investigation was Constitutionally deficient. In Wiggins, a Maryland State trial court, the defendant was convicted robbing an elderly woman and drowning her in the bathtub of her apartment. The defendant was eligible for the death penality, but the defense decided not to put up any mitigating evidence. The defendant was convicted, and alleged on habeas corpus that his counsel had been ineffective.

The High Court explained that its focus was not whether counsel should have presented a case in mitigation, but on "whether the investigation --

--supporting counsel's decision not to introduce mitigating evidence of [the defendant's] background was itself reasonable." Wiggins, 539 U.S. at 523. In reviewing the adequacy of defense counsel's legal representation, the high court found that trial counsel had abandoned their investigation of defendants background after having acquired only "rudimentary" knowledge of his history from a narrow set of sources. Id., at 524. The court found that this limited investigation not only was unreasonable under then-applicable standards, but that it was also unreasonable in light of the leads that counsel actually dis-covered - leads which would have caused any reasonably competent attorney to realize "that pursuing these leads was necessary to making an informed choice amoung possible defenses..." Id., The court found also, that, because counsel spent insufficient time considering and developing a trial strategy, counsel's failure to investigate thoroughly resulted from inattention, not reasoned stra-tegic judgment. The Wiggins court also rejected the ideal that because cousel has some information to work with, they were ub a position to make a tactical choice not to present a mitigation defense. Instead, the court stated that, in assessing the reasonableness of an attorney's investigation, a court must cons-ider not only the quantum of evidence already known to counsel, but also whet-her the known evidence would lead a reasonable attorney to investigate further. Hence, Strickland, could not be read to render trial counsel's bulletproof un-der the Sixth Amendment merely by saying it was done for "strategic reasons". Rather:

> [E]ven assuming thatcounsel limited the scope of their investigation for "strategic reasons" Strickland, does not establish tha a cursory investi-gation automatically justifies a tactical decision with respect to... strategy. Rather, a reviewing court must consider the reasonableness of the investigation said to support that strategy. Wiggins, 539 U.S. at 527.

Applying the above principles as a guide to determining whether counsel's performance was deficient, the Wiggins, court found that counsel "chose to abandon their investigation at an unreasonable juncture, making a fully infor-med decision with respect to...strategy impossible." Id., at 527-528. The court therefore concluded: "Counsel's investigation...did not reflect reasonable professional judgment. Their decision to end their investigation when they did was neither consistent with professional standards that prevailed in 1989, nor reasonable in light of the evidence counsel uncovered...-evidenc that would have led a reasonable competent attorney to investigate further." Ibid.

Applying **Wiggins**, ["What matters is the substance of the investigation—whether counsel in fact explored those avenues reasonable counsel would have pursued in light of what was known and in light of the defense strategy."]

The **Strickland** test does not afford any slavish deference to decisions by trial counsel are based - not on informed "tactical" choices but rather on a failure to conduct reasonable investigations in the first place.

The situation is analogous, it is trial counsels failure to investigate that is assailed, rather than informed tactical decisions made in wake of a reasonable through investigation. Petitioner proceeds to apply these general principles to ineffective assistance of counsel, sub-claims made herein:

Deficient Performance

## 1. Failure to Investigate and Prepare for Trial

Counsel has a duty to make a reasonable investigation of defendant's case or make a reasonable decision that a particular investigation is unnecessary. **Strickland**, 466 U.S. at 691; **Wiggins**, 123 S.Ct. 2527; **Rompilla v Beard**, 125 S.Ct 2450. Counsels investigation of a case consisting of reviewing the investigative file of the prosecuting attorney is ineffective and such investigation falls short of what a reasonable competent attorney would have done. **Richards v Quarterman**, 566 F.3d 553 (5th Cir 2009). Even though counsel did cross-examine witnesses and that cured any lack of pretrial investigation, the Courts have said this is not true. See **Bryant v Scott**, 28 F.3d 1411 (5th Cir 1994). Failure to conduct any pretrial investigation generally constitutes a clear instance of ineffectiveness. **Richards**, 566 F.3d 553.

Here, Petitioner asserts trial counsel failed to conduct an independant investigation and prepare for trial, and failed to file a motion for discovery to uncover exculpatory and mitigating favorable evidence. A motion that would have earnes the prosecutor to deliver <u>All</u> exculpatory and mitigating evidence, for avoidance of violating <u>Brady</u>. An obligation the State has to defense, not disgorge every piece of evidence, rather evidence that is favorable to accused and material to guilt or innocence, includes impeachment evidence. **Bagley**, 473 U.S. at 674,676; See also, **Wilson v Whitley**, 28 F.3d 433, 435 (5th Cir 1994), 513 U.S. 1091, 115 S.Ct. 754 (1995).

In case at bar, Polk County Detective Chris Lima, withheld at direction of the Court, (1) Evidence Log(s) from search and seizure Jan. 2013 & June 2012

19

(2) Copies of Original Warrant, signed in Two different colors of ink, missing staple holes, indicative of where "testified to" return was attached. (3) Copy of Crime Stopper Tips, (4) Copies of "Unexecuted" return (5) All notes and logs relating to cause 22709. While Petitioner has addressed the "Ineffectiveness" of Counsel in Ground 1, ante at 2. Incorporating page 1 and 2, All forementioned items support Petitioner position. This evidence would have enabled Petitioner and/or Counsel to make an intelligent decision on Pleadings, had Trial Attorney secured this withheld evidence.

• **In Addressing Ground 2:** Trial Counsel failed to secure Lab results in addition to "Evidence Logs" ibid at 19. Counsel neglecting to file a "Motion for Aggregate Lab Analysis and Hearing" is unreasonable and deficient performance, "Contrary to" Appellate Courts, and Supreme Court holdings that require "mixtures" be seperated ante at 3, 5. Counsels reliance on States investigation is deficient performance and prejudices his client by not providing him with the "actual" chargeable weight of controlled substance, which may have altered the plea of Defendant. Moreover,

Counsels reliance on States investigation is "Ineffective Assistance" Anderson v Johnson, 338 F.3d 382 (5th Cir 2003). Counsel fell below an "objective standard of reasonableness" with investigative failures and shortcomings that led to an unjustified 50 year sentence on each count. Beltran v Cockrell, 294 F.3d 730 (5th Cir 2002). Counsels failure to obtain forensic analysis of evidence enabled the State to Ignore State and Federal Law that require State to prove: A) Scope of warrant, (where possession is in dispute) ante at 10; B) Percentage of "Methamphetamine" in "mixture", which by law, State was required to prove, regardless of plea.

After incorporating pages 3-5 of this Writ, Petitioner meets the deficient and prejudice prongs of Strickland v Washington, 466 U.S. 668 (1984).

### Relief should be granted on this claim

• **In Addressing Ground 3,** (Illegal Search and Seizure) Ineffectiveness is addressed at 10 and 11 and fully supported in pages 6 thru 11.

• **In Addressing Ground 4:** (Brady Violation by Investigative Agencies), Counsel was unsucessfull obtaining withheld evidence from the Court, unreasonably pursuades client to take an open plea so his conviction can be appealed, ante at 2. This is also tied to "failure to investigate" which would have —

shown counsel so many things being withheld deserved at a minimum a "Motion
for mis-trial" While Counsel had an arsenal of options available to him, he
instead chose to abandon his client to the Appellate Courts after losing at
the suppression hearing.

Trial Counsel fell below an objective standard of reasonableness, and
prejudiced his client with his shortcomings and failures, while failure to
investigate is deficient performance, abandoning his client to the Appellate
Courts with a combined sentence of 100 years, because of Counsel's Shortcomings
is prejudice. See **Wiggins v Smith**, 539 U.S. 510 (2003); **Williams v Taylor**,
120 S.Ct. 1495 (2000). Trial Counsels failure to secure "Brady" material is
and amounts to "Actual and Constructive Denial of Counsel Altogether" and
meets the unreasonable and prejudical prongs of **Strickland v Washington**, 104
S.Ct. 2052 (1984). In certain 6th Amendment contexts, Prejudice is presumed,
actual or constructive denial of Counsel altogether is legally presumed to
result in Prejudice. **Strickland**, at 2067.

• In Addressing Ground 7, (I.A.C. Competency Hearing not Conducted),
Ineffectiveness of counsel is fully addressed and supported therein.

• In Addressing Ground 8, (Double Jeopardy), Fact circumstances are similar,
and evidence seized on Jan. 12, 2013 were precursors, items left at scene
processed by PCSO on June 29, 2012. Ironicaly this property seizure came from,
does not belong to Petitioner, and State has not proven any connection between
this property and Petitioner, And Yet, for a 2nd time State charges petitioner
with items PCSO "left at scene" on June 29, 2012.(See Evidence Log S1201616).
Furthermore, State conceded that: "...All three were second degree felony
cases steming from the same set of fact circumstances that led to the indict-
ments in the two cases before the court." (RR4 at 8)

Trial Counsel was deficient in performance and fell below an objective
standard of reasonableness failing to even address this issue to the Court.
State conceded in testimony that Petitioner was "Never There", never proving
Possession ante at 10. Trial Counsels failure to address this issue amounts
to "Actual and Constructive Denial of Counsel Altogether" and meets the
unresonable and prejudice elements of the **Strickland**, Standard. In certain 6th
Amendment Contexts, Prejudice is presumed, and actual or constructive denial
of counsel altogether is legally presumed to result in prejudice. **Strickland v
Washington**, 104 S.Ct. 2052, 2067 (1984).

21

•    In Addressing Ground 9, Ineffective Assistance  on (Judical Bias on
Facially Invalid Warrant) Petitioner asserts, Trial Counsel was deficient in
performance, not challenging with vigor, the bias's of the Judge, whom
hamstrung counsel with her improper rulings. Though trial Counsel did preserve
22749 for review. He failed to preserve 22709 which is addresed in Ground 3.
While Counsel failed to have the warrant suppressed, His short comings were
apparant after loss at suppression hearing. Apparantly, Trial Counsel was so
confident in a "Trial Strategy" that contained only suppressing a warrant with
no alternate strategy. The Supreme Court has held that, trial strategy without
a substancial investigation into the fact circumstances is deficient performa-
nce. ante at 10. Moreover prejudice occurs when counsel abandons his client to
the Appellate Courts for his shortcomings.

Trial Counsel Prejudice his client by this abondonment, and deficient
performance results in Ineffective Assistance of Counsel, as guaranteed by the
6th and 14th Amendment of the United States Constitution. Since Petitioner has
met both the prejudice and deficient prongs of <u>Strickland v Washinton</u>, 466 U.S.
668 (1984) Relief should be Granted to Petitioner.

2.   Trial Counsel Neglected to file Motions with the Court.

While Defendant is entitled to "reasonably effective" assistance of
Counsel as guaranteed by the 6th Amendment. Counsels responsibilities do not
begin and end at trial. Moreover, the United States Supreme Court noted in
<u>Coleman v Alabama</u>, that preliminary hearings have been found to be a "critical
stage" of a criminal proceeding, and decisions therein should not be taken
lightly. 90 S.Ct. 1999.

While Counsel had been appointed, Petitioner was not represented, inasmuch
Petitioner had to file "his own" hand written motions to the 258th Judical
District Court, presided by Judge Elizabeth Coker until transfer of the case's
to the 411th Judical District. Petitioner effectively, had no legal representa-
tion, filing a Motion's for: "Bond Reduction", Competency Hearing, and Aggr-
gate Hearing, all of which sumarily ignored, since Petitioner never recieved
response.

Trial Counsel neglected to file "motion for discovery" , as indicated by
prosecutor : "Your Honor, if Defense Counsel wants copies of something he can
request it thru discovery..." Cause No. 22749 (RR2 42:11-13).

22

During suppression hearing April 17, 2014, Court discovers at close of hearing Defense Counsel never filed a motion for one. "...Have you found a copy of the motion yet?", Prosecutor States: "There was not a motion filed." Trial Counsel State: "I thought there was", "Maybe there has not been one filed as of yet. Obviously the rules allow us to do it orally." Trial Judge asking what she can sign, Trial Counsel responds "I mean, I can certainly get you one that says denied." Cause 22749 (RR2 66:8-23).

Furthermore, Counsel Knew of Petitioner and Judge Jones conflicting past encounters, and neglects to file a "Motion to Recuse" until the day of Trial, Nov. 3, 2014 which is denied as "Untimely" See (CR 22749 Vol.2 pg 43).

Trial Counsel's prejudice to his client, without regard to whether or not his client received a fair and impartial hearing as the United States Constitution's 5th Amendment guaranteed is not only apparant thru his actions, or lack thereof, it is also apparant thru his verbage to the court at close of suppression hearing. "...I can certainly get you one that says denied" Ibid.

Counsel was deficient in performance, prejudicing his client, neglecting to file Motion(s) with the Court to protect his cliemts Constitutional Rights actions that fall below a "objective standard of reasonableness" that is demanded of counsel by the Strickland Standard.

Additionally, Multiple Circuit Courts and the United States Supreme Court many cases involving "Failure to Investigate" have all arrived at the same conclusion, that while deference to Counsel's judgment is high, there can be no reasonable strategy Without a substancial investigation into the case and fact circumstances necessary to acquire a thorough understanding or knowledge of the case. Furthermore, many Courts have found  (failure to investigate or a reliance on States investigation) is ineffective assistance. See Anderson v Johnson, 338 F.3d. 382 (5th Cir 2003); Strickland v Washington, 693 F.2d. 1252 (5th/11th Cir 1982); Wiggins v Smith, 539 U.S. 510 123 S.Ct. 2527 (2003); Williams v Taylor, 599 U.S.362 120 S.Ct. 1495 (2000); Strickland v Washington, 466 U.S. 668  104 S.Ct. 2052 (1984).

Relief to Petitioner should be Granted for the Prejudice and Deficient performance of Counsel.

3.  Pre and Post Deficiencies of Counsel at Sentencing

An Actual and Constructive Denial of Counsel altogether occurs when; At pre-sentencing hearing on Nov. 6, 2014 Counsel for the Defendant neglected to appear with his client. The following exert is in clerks records; "Mr. Lovell was asked to give his version of the events that led to his arrest for possession with intent to deliver a controlled substance. Defendant stated "his Attorney was Not present and thought it was best he did not comment about his case."" See (CR 22749 Vol.2 and 22709 Vol.2 pg 4-15 Id at pg 6)

An "Actual and Constructive Denial of Counsel Altogether" meets the unreasonable and prejudice elements of **Strickland v Washington**, 104 S.Ct 2052 at 2067. (1984) Whereas, Relief to Petitioner is requested.

During the Sentencing Phase, Trial Counsel failed to object to Introduction of Irrelevant material that violated Petitioner's 1st Amendment Rights.

Det. Lima was asked by prosecutor: "were there any White Supremicist type or gang affiliated type items" in reply, "There was a nazi flag" (RR4 65-66), When Trial Counsel did not object State continued to bloister its case. The State in closing arguments that the Court should "glean at least a good inference that he has a gang affiliation and certainly White supremacist leaning..." Id at 85), and "alife sentence in each case would be appropriate" (RR4 87:17) With bias already instilled upon the Judge, Petitioner was given 2 50 year sentences'.

The United States Supreme Court held in **Texas v Johnson**, who was convicted in Dallas County for flag desimination; "The bedrock principle underlying the First Amendment, is that Government may not prohibit expression of an idea, simply because society finds idea itself offensive of disagreeable." HN 9.

    a) Johnson's burning of the flag was an expresive conduct, permitted by the first Amendment.

    b) Expression may not be prohibited on the basis that an audience that takes serious offence to the expression may disturb the peace.

    c) The Government maynot prohibit the verbal or nonverbal expression of an idea mearly because society finds the idea offenseive or disagreeable.

"nor may a State fasten its own view of the flag by prohibiting expressive conduct relating to it since the government may not permit designated symbols to be used to communicate a limited set of messages."
109 S.Ct. 2533, at 2536. (1989)

While Johnson was convicted for engaging in expressive conduct. The State interest in preventing preaches of peace does not support his conviction, because Johnson's conduct did not threaten to disturb the peace. Nor does States intrest preserving the flag as a nation hood and national unity justify his criminal conviction. The Court finding for Johnson, who was convicted at trial then reversed by 5th Judical District, Dallas TX, reversal challenged by State and Supreme Court Affirming decision of 5th Judical District. 109 S.Ct. 2533.

Case at bar, Petitioner did not burn a flag, he mearly possessed one of a controversial idea, an idea and expresion that is protected by the 1st Amendment of the United States. There was no public threats, nor disturbance of the peace. State and Det. Lima utilized private material, a flag, an idea, protected by the 1st Amendment to seek a harsher sentence, requesting Life as punishment sentence when there was no relevance whatsoever to the instant case. Ironically,

The Supreme Court of the United States held in **Dawson v Deleware**, that "it was Constitutional error to admit stipulation of defendant's membership in White, Prison, racist gang where evidence was not relevant to any issue being decided at the punishment phase" 112 S.Ct. 1093 (1992).

Trial Counsel was unreasonable, falling below an objective standard of reasonableness. Failing to Object to this egregious introduction by the State. While previously mentioned, Trial Judge refused to recuse herself, ante at 23. and will be further addressed in Ground 9, is in an of itself reason for concern. The Bias displayed by Honorable Judge Jones for this introduction of a 1st Amendment protected item and idea, cannot be measured. Although, it can be reasonably decerned when Petitioner's ex wife recieved 10 years probation and Petitioner received 50 years incarceration on this charge only 22709 and both parties had the same relative history with the State.

State Courts denial for relief was unreasonable and "contrary to" clearly established Federal law as determined by the Supreme Court of the United States when in States Original Answer, State implies: "Nowhere does applicant explain how any of these alleged shortcomings affected his decision to plead guilty..." (SOA 22749 and 22709 at 8). While Counsels Ineffectiveness is shown at (SHC.mem. 21-27) State does not address Petitioner's ground 1 of State Habes Corpus fully only addressing the voluntary portion, "Ground Number One (1)-Applicant's Plea was not made Knowingly, Intelligently or Voluntarily"(SHC.mem. at 1)

State Could have found in Ground One the explanation driving Petitioner to plea as he did "1) Applicant contends plea was coerced and applicant was not competent to enter into a plea..." (SHC.mem. at 1); 2) "Applicant's plea was based on promises that were not fulfilled..." (SHC.mem. at 2) 3) "Applicant's plea was based on counsels erroneous advice..." 4) "Applicant's plea was made without the knowledge of favorable evidence which was withheld by the State..." (SHC.mem. at 2). (While not in Ground 5, they were in "Labeled Ground")

Moreover, State further implies; "Chalenges the validity of a plea entered upon the advice of counsel, contending that his counsel was ineffective, "the voluntariness of the plea depends on (1) whether counsel's advice was within the range of competence demanded of attorneys in criminal cases and if not (2) whether ther is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty"". (SOA 22709 at 8-9)

A person of common knowledge and reason could only contend; if a cause i.e. 22709 is not addressed by counsel, then counsel fell below an objective standard of reasonableness, and is deficient in performance.

Texas Courts were unreasonable and "contrary to" clearly established Federal Law, as determined by the Supreme Court of the United States. Denying Petitioner's Writ of Habeas Corpus on the findings of the trial Court without a hearing, when it is apparant State elects to not utilize Applicant's habeas corpus memorandum properly filed with the Court. Petitioner having met the dual prongs of Strickland, in the majority of claims addressed and the prejudice prong in 3 issues where an "Actual or Constructive Denial of Counsel Altogether" meets the unreasonable and prejudical elements of Strickland v Washington, 466 U.S. 668 104 S.Ct. 2052 at 2067 (1984), and that this Honorable Court Grant relief to Petitioner for the Constitutional errors of Counsel.

Additionally, Petitioner requests that this Honorable Court as in Kyles v Whitley, consider each claim individually, rather than cumulatively. 514 U.S. 419 at 434 (1995), although, if this Honorable Court does not consider the claims individually warrant Ineffective Assistance that [It] reconsider the claims cumulatively to encompass the totality of Ineffective Assistance of Counsel. Williams v Taylor, 120 S.Ct. 1495 at 1515 (2000)

GROUND 6 = INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL

Petitioner's Appellate Counsel was Ineffective, failing to address trial errors with arguable merits. This violated Petitioner's right to Counsel, and Due Process of Law as guaranteed by Amendments 5, 6, and 14 of the United States Constitution. See Strickland v Washington, 466 U.S. 668 104 S.Ct. 2052 (1984); Evitts v Lucey, 469 U.S.392 (1985);

## STANDARD OF REVIEW

While incorporating the "Standard of Review" from Ineffective Assistance of Trial Counsel ante at 16. The general principles apply that, a defendant has the right to reasonably effective assistance of counsel, at trial and appeal. Thus he is entitled the competent assistance of an attorney who acts as his diligent and concientious advocate. See Evitts v Lucey, 469 U.S. 392 .

The principles governing ineffectiveness claims apply in federal colla-teral proceedings as they do on direct appeal or in motions for a new trial. And in a federal habeas challenge to a state criminal Judgment, a State Court conclusion that counsel rendered effective assistance is not a finding of fact binding on the federal court to the extent stated by 28 U.S.C. § 2254(d), but is a mixed question of law and fact. Strickland v Washington, 466 U.S. 668*; 104 S.Ct. 2052**; 80 L.Ed.2d 674*** 1984 U.S. Lexis 79 at 9 (1984)

## ARGUMENT AND AUTHORITIES

Appellate counsel failed to raise that warrant issued June 29, 2012 did not include a search of the adjacent property "Wooded area", and Evidence Log supported items seized were from "wooded area", that State did not prove owner-ship or control of. Furthermore Appellate Counsel failed to include in his Brief in cause 22749 that the warrant was in 2 different colors of ink, and that the signing judge had to volutarily resign to to multiple jury tampering and witness tampering. This information was readily available online as well as thru the State Commission.

While Appellate Counsel did file a brief in cause 22749 that did include "Probable Cause", "Warrant not properly sworn to", and "Issuing Judge/Magistrate not Neutral or Detached", the brief was lacking these fundamental keys that forementioned above, that would have made any Court or Juror of reason to reconsider their position and find for the Petitioner.

Deficient Performance was displayed by Appellate Counsels lack of "compl-eteness" filing an inadequate, unintelligent, and uniformed Appeal.

An Appeal that would have also addressed the Courts need for Aggregate Lab analysis and hearing, that is consistant with the Circuit Courts, following guidance from the holdings of Supreme COurt of the United States, to determine whether charge or sentence was appropriate to charge. Prejudiceing Defendant.

Double Jeopardy should have been addressed since State conceded, "...All three were second degree felony cases <u>Steming from</u> the same set of fact circumstances that led to the indictments in the two cases before the court."

Procedural issues should have been addressed since Trial Counsel did not file "Motion for Discovery" (per prosecutors statements) or "Motion to suppress" And did not file "Motion to Recuse" until day of trial, Nov. 3, 2014 which was denied as "Untimely", This clearly prejudice Petitioner's right to "Fair Trial"

Moreover, had Appellate Counsel performed a minimal investigation, i.e. "read clerks file" he would have discovered Petitioner was arrested, and search conducted PRIOR to issuance of warrant that arrived a Petitioner's residence a little after 3 pm June 29, 2012. And "Probable Cause Determination Affidavit" support this when Petitioner was transported to Polk County Jail at 3pm, under this Affidavit, that states "property was searched" yet warrant had not arrived

Texas Courts decision to deny relief is unreasonable, and "Contrary to" clearly established Federal Law as Determined by the Supreme COurt of the United States. 28 § 2254(d)(1). When Appellate Counsel's neglect in cause 22709, by filing a Brief that is a near Copy of 22749, Ante at 11. Appellate Counsels fails to be an advocate, "contrary to" <u>Evitts v Lucey</u>, 469 U.S. 392 (1985), where competent assistance is required, and due dilligence necessary...Trial Counsels failure to file a proper brief, was in effect, not filing a brief at all. This neglect amounts to an "Actual an Constructive Denial of Counsel altogether" and in certain 6th Amendment context, prejudice is presumed, and "actual or constructive denial of Counsel altogether" is legally presumed to result in prejudice. <u>Strickland v Washington</u>, 466 U.S. 668 104 S.Ct. at 2067(1984)

Counsel Should be found, Ineffective and Deficient in performance, Prejudicing his client, for this total denial of counsel. Relief should be and is requested by Petitioner, that his Conviction reversed, Sentence vacated, and any other relief this Honorable Court deems fit and Proper.

GROUND 7 = INEFFECTIVE ASSISTANCE OF COUNSEL
COMPETANCY HEARING NOT CONDUCTED

Petitioner was denied the right to have Effective Assistance of Counsel, and to a hearing on his compentency to plead a charge in the face of conflicting evidence as to his sanity. This violated Petitioner right to Counsel and Due Process of Law as guaranteed by Amendments 5, 6, and 14 of the United States Constitution. See Cooper v Oklahoma, 116 1373, 1384 (1996); Wiggins v Smith 539 U.S. 510 (2003); Pate v Robinson, 383 U.S. 375 86 S.Ct. 836 (1966).

## PERTINENT FACTS

Trial Court's reversable error: failing to conduct a compentency hearing after learning that Defendant had suffered Injury and Damages to the Brain Due to previous motorcycle accident. Treatments had begun for "Displaced Personality Disorder." (RR3 7:10) defined by D.S.M.S. (2015), and that "the forces of the cosmos were against him." See (RR4 44:13)(SHC.app.18,19; mem.30)

While this Ground is relevant to casue 22749 and 22709, all record citings are addressed from 22749. This Ground is tied to Ground One, on Petitioner's ability to Plea, as well as Ineffective Assistance of Counsel.

## ARGUMENTS AND AUTHORITIES

The United State Supreme Court has held the Standard of competency is the same for determining whether an individual is (1) Competent to stand trial (2) Waive Counsel; and (3) Plead to charge. A "Court must conduct, sue sponte, a compentency hearing when there is information known to the court at the time of the trial or plea hearing sufficient to raise doubts about the defendants competency." Pate v Robinson, 383 U.S.375 86 S.Ct. 836 (1966); Cooper v - Oklahoma, 517 U.S. 348 116 S.Ct. 1373, 1384 (1996).

State implies in its Original Answer to Both causes that: "The Applicant has presented no evidenc to show he was incompetent at the time of plea." See (SOA at 3). Furthermore, State relies on TCCP Art. 46B.003(b) implies: "...a defendant is presumed competent to stand trial and shall be found competent to stand trial unless proved incompetent by a preponderance of the evidence." And "...has not overcome the presumption that he was competent at the time of his plea." See (SOA 22709 at 10; 22749 at 11).

States reliance on TCCP Art. 46B.003(b) is in conflict with the United States Supreme Court holdings of Pate v Robinson; and Cooper v Oklahoma, supra,

When evidence presented does overcome any presumption State percieves to exist and when Trial Court Judge, Fromer Prosecutor with failed cases against Petitioner, clearly remembers and refuses to recuse herself, ante at__, displays bias asking Trial Counsel, Mr. Davis, if his client is competent. Trial Counsel unqualified as a "Medical Professional" under Texas Health and Saftey Code § 571.003(18) which defines a "physician" or § 571.003(15) which defines a "mental health professional" simply replies "Yes" he is competent. Trial Judge gives Petitioner an "elementary" Q and A to find him competent, clearly outside the scope of her "professional expertise" as defined by THSC. (RR3 7,8).

State's decision to deny a competency hearing when information became known to the court prior to pleadings, of a "physical" brain injury, causing mental injury, is an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding., And "contrary to" clearly established Federal Law as determined by the Supreme Court of the United States Pate v Robinson, 383 U.S. 375 (1966); Cooper v Oklahoma, 517 U.S. 348 (1996).

Additionally, State implies: "...That applicant was competent at the time of his plea." (States.FOF at 1:3) Is an unreasonable determination of the facts in light of the State Court Proceedings., When THSC § 571.003(14) defines "mental disease or defect" and a brain injury undergoing treatment was discovered prior to pleading, of Which Trial Judge nor Defense Counsel is qualified to access Petitioners "mental illness" atributed to "physical injury".

While Petitioners Claim is a Due Process of Law violation, it is tied to Ineffective Assistance of Counsel. Deficient performance occurs when counsel falls below an objective standard of reasonableness. Defendant is Constitutionally entitled to have counse act as an "Advocate", and fails to do so by endorsing the Court with his "personal medical opinion", when he is unqualified to do so is deficient performance. Anders v California, 386 U.S. 738, 743 (1967) In certain 6th Amendment context prejudice is presumed and "Actual or constructive denial of counsel altogether" is legally presumed to result in prejudice Strickland v Washington, 104 S.Ct. 2052, 2067 (1984).

Petitioner request this Honorable Court to Vacate his sentence, reverse conviction, Remand for competency hearing, or any other relief this Honorable Court deems fit and proper.

30

GROUND 8 = DOUBLE JEOPARDY

The Fifth Amendment of the United States Constitution guarantees:
"No person shall be...subject for the same offence to be twice put in jeopardy
of life or limb; nor shall be compelled in any criminal case to be witness
against himself, nor be deprived of life, liberty, or property, without due
process of law..." Fifth Amendment to United States Constitution (1791)

## PERTINENT FACTS

Petitioner charged from the search of 648 L.C. Hershcap Ln, Livingston
Texas, on Jan. 12, 2013. PCSO Rediscovering same evidence [it] discovered and
left behind after search of property  on June 29, 2012, AND from an adjacent
property "ownership unknown", where seizure occured, charging Petitioner
twice, never proving Petitioner's control or ownership of contraband found.

State consolidates cases despite "Motion to Consolidate" was denied
July 30, 2013. See (CR 22709 vol 1 pf 11-13)(CR22749 vol 1 pg 20-22) Note:
Cause 22709 Vol.3 is identical, word for word with cause 22749 Vol.4;

## ARGUMENT AND AUTHORITIES

Incorporating facts and statements from Ground 3 and 9, Cause 22709 stems
from: The result of illegal search of Petitioner's property and illegal search
of adjacent property (Ownership Unknown), performed on June 29, 2012 Id as
cause 22749. PCSO "left at scene" various items, as identified on Evidence Log
S1201616 (Exhibit "C"). A "C-E" warrant was issued for Petitioner days follow-
ing the search. ante at $9$ . Det. Lima over the course of 6 months made multiple
trips to residence to execute C-E warrant, "but he was never there" ante at $9$ .

On Jan. 12, 2013 Det. Lima made yet another trip to the residence, forced
entry into residence. ante at $9$ . Searcher for Petitioner to execute arrest
warrant. Searched dresser he searched June 29, 2012, finds contraband, extends
his search to adjacent property rediscovering evidence left at scene June 29,
2012. ante at $9$ . Created new charge, 22709.

State Conceeded that:
"we had a total of Five cases pending before the Court, if the court
recalls; and we have dismissed three of those cases. Those were or all
three were second-degree felony cases stemming out of the same set of
circumstances that lead to the indictments in the two case before the
court." (RR3 7:24-8:3==22709)(RR4 7:24-8:3==22749) SHC.mem at 32

31

It is discovered Det. Lima had evidence log S1201616. that was "suppose
to go to defendant." (cause 22749 RR2 40:10-24), and the evidence log in case
pack "file with his wife" (cause 22709) in the same file. Defense Counsel wants
copies (cause 22749 RR2 42) ante at $37$. The Court refuses, ante at $37$. Where
this exculpatory evidence would have shed light on Defendants position, to
allow an informed decision on an alternative trial strategy, showing evidence
stemmed from the same set of circumstances, resulting in Double Jeopardy claim

When the charge is "Possession", the proscribed conduct is "Possession".
States decision to deny relief was "Contrary to" and unreasonable application
of clearly established federal law as determined by the Supreme Court of the
United States. When "Conduct" of possession is not proven by State as articul-
ated in Grady v Corbin, to determine whether prosecution is barred by the
Double Jeopardy clause, Court must first apply the traditional "Blockburger"
test; If Application of that test reveals that the offense(s) have identical
statutory elements or that one is a lesser included offense of the other, then
the inquiry must cease, and subsequent prosecution is barred. Although, test
is not an "actual evidence" or "same evidence" test, critical inquiry is what
"Conduct the state will prove, not the evidence the state will use to prove
the conduct." Additionally, "a state cannot avoid the dictates of the Double
Jeopardy Clause merely by altering...the evidence offered to prove the same
conduct." 110 S.Ct. 2084 (1990).

State must conced, By testimony of it's officers, Petitioner was never at
residence, nor in control of adjacent property, thereby conduct of possession
was not proven, and the Double Jeopardy clause should "bar subsequent prosecu-
tion if one of the facts necessarily determined...is an element of the subse-
quent prosecution." U.S. v Sarabia, 661 F.3d 225,229 (5th Cir 2010).

Texas High Court's decision denying relief to Petitioner is "contrary to"
clearly established federal law, as determined by the Supreme Court of the
United States., When the State does not prove "conduct" of "possession" as
required by law. In Fugate v New Mexico, Supreme Court stated:

> "Today we adopt the suggestion set forth in 'Vitale': We hold that the
> Double Jeopardy clause bars a subsequent prosecution if, to establish an
> essential element of an offense charged in that prosecution, the govern-
> ment will prove conduct that constitutes an offense for which the defen-
> dant has already been prosecuted." 470 U.S. 984 105 S.Ct.1858 84 L.Ed.
> 2d 277 (1985); Thigpen v Roberts, 468 U.S. 27 104 S.Ct. 2916 (1984);
> See Illinois v Vitale, 447 U.S. 410 100 S.Ct. 2260 (1980).

GROUND 9 = JUDICAL BIAS ON THE FACIALLY INVALID WARRANT

Judical Bias contributed to Petitioner's conviction adjacent to evidence seized on the basis of a facially invalid warrant that could not be cured by the incorporated affidavit. This violates Petitioner's Rights to Due Process of Law, as guaranteed by Amendment 4, 5, 6, and 14 of the United States Constitution. See Groh v Ramirez, 540 U.S. 551 (2004); Minnesota v Carter, 119 S.Ct. 469 (1998); Coolidge v New Hampshire, 91 S.Ct. 2022 (1971).

Record citings refer to cause 22749 unless otherwise indicated.

## ARGUMENT AND AUTHORITIES

SECTION 1)

Judge Not Neutral or Detached Issues Search Warrant Without Probable Cause

Suppression Hearing April 17, 2014

Defense Counsel Admits into evidence: "Defendant's Exhibit No.1 and Defendant's Exhibit No.2." (RR2 7:13-14), then explains to the Court, (Exhibit "A" of Defendant's Exhibit No.1 and No.2 are multiple versions of the same probable cause affidavit for search warrant.) See (Appellate.Bf at 10-12)

> "No.1 is a copy of the original search warrant that was retrieved from Judge Coker's office. It was also as the document existed in the State's file throughout the handling of this case. It only has -- it has an Exhibit A included in that document that is two pages, Exhibit A, and the signature page." (RR2 7:20-25).

> "Exhibit 2 is what we believe will be purported to be what the officers who drafted it thought was the exhibit attached at the time of filing-- at the time of presentation, as well as time of filing. So Exhibit 2 is a three page document. Basically the only difference is there is a second page with narrative in it. (RR2 8:1-6).

Throughout this case, Defendant's Exhibit No.1 is the Only copy of Exhibit "A" in the Judges/Courts File and States file. The Chain of custody in the record is as follows: (1) 3 pages allegedly typed and sent wireless from the scene to PCSO printer. (RR2 30:7-8): (2) Page count "assumed" when removed from printer. (RR2 52:18); (3) Signing Judge does not recall page count. (RR2-11-10); (4) Judge returns all pages handed to her after signing back to Officer Smith. (RR2 15:1-10); (5) Officer Smith delivered pages to Det. Lima, whom without review or presentation to defendant, secured in his patrol vehicle. (RR2 30:21-31:3); (6) Det. Lima took pages back to office and copied for packets. (RR2 32:20-25); (7) Det. Lima filed warrant with only a 2 page Exhibit "A" with the Court and District Attorney. (RR2 33:20-25).

Former Judge, Elizabeth Coker testifies:

Q: "...Do you recall dealing with Mr. Lovell while you were on the bench?"
A: "In what capacity?"
Q: "Just that you were the presiding Judge over his case at that time."
A: "Correct"
Q: "And...you were the Judge who the search warrant was presented to for signature June 29, 2012?"
A: "...that is correct."

(RR2 9:2-12), Establishing Judge Coker was Not "Neutral and Detached".

Judge, Elizabeth Coker was presiding over the 258th Judical District Court until her voluntary resignation, "in lieu of displinary action by State Commission on Judical Conduct, pursuant to 33.032(h) of the Texas Government Code." (See Exhibit "B").

A thorough investigation exceeding a year, uncovered: Witness and Jury tampering, and a texting scandal involving multiple prosecutors in open Court, in their offical capacities while performing their Judical duties. The Commissions report included by name Kaycee L. Jones, (former ADA), who before August 9, 2012, "was in the ear" of prosecutors during trial, "all the time regarding information she believes to be given to her by Judge Coker via text during trial." See (Exhibit "A1"). Kaycee L. Jones, now the current presiding Judge of 411th Judical District Court, where Judge Coker transfered this case to on August 5, 2013. See (Exhibit "A2" thru "A5").

Judge Coker could not remember whether the warrant she signed was 2 or 3 pages. (RR2 11:3-11). Court questions if Defendant's Exhibit No.1 is an original or a copy?, under an assumption "Original" is in safe keeping in 258th file locker. (RR2 11:17-23). Prosecutor states: "No..."""The original is in the possession of Chris Lima...", Incredibly, Court responds with: "The Original is what--"! (RR2 11:24-12:3). It is reasonably inferred, Det. Lima maintained the "Original Warrant" since June 29, 2012, when a completed return was lacked from filing, and absent from Courts file (RR2 12:7-24).

On Cross-examination, Judge Coker testified, she would review the warrant to determine probable cause, sign it, and then swear the officer to attest to the authenticity of the affidavit. (RR2 13:11-17)

Judge Coker re-examines Exhibit "A", Defendant's Exhibit No.1 and states: "it does not appear to be complete" (RR2 18:14). Later testifies she does not review the return when it's brought back (RR2 22:4), And warrants she had signed have been suppressed, sometimes suppressing her own warrants. (RR2 23:14-25)

34

Texas 1st Court of Appeals was unreasonable finding "Judge Coker stated that it was her practice to review the affidavit to ensure compliance with the Code of Criminal Procedure..." (1st CoA.mem.op. at 8). This Statement contradicts the actions of Judge Coker violating Texas Code of Criminal Procedure and Federal Law after signing warrants for her own Court. Ibid at__. Not being "Neutral and Detached" as both State and Federal Law dictate, as in the case at bar, in addition, to search warrants [she] granted and later had to suppress. (RR2 23:23-25).

Moreover, "Suppression remains an appropriate remedy if the magistrate or Judge in issuing a warrant was misled by information in an affidavit... that affiant knew was false or would have known was false except for his reckless disregard of the truth, or if the issuing magistrate wholly abandoned his detached and neutral role." U.S. v Leon, 104 S.Ct. 3405, at 3408 (1984).

Texas Courts denial for relief was unreasonable and contrary to...clearly established Federal Law, as determined by the Supreme Court of the United States, When, "The search warrant must be issued by a neutrak and detached magistrate..." (Appellant.Bf. at 13). Moreover, Appellee does not dispute in its reply. In Coolidge v New Hampshire, the Supreme Court holding:

> "That the warrant authorizing the search of Coolidge's automobile was invalid on the ground of its <*pg565> not having been issued by a neutral and detached magistrate, and the seizure and subsequent search of the automobile could therefore not constitutionally rest upon such a warrant --and the fruits of the unconstitutional seizure...were inadmissable." 91 S.Ct. 2022 (1971) (emphasis____added)

Texas Courts were "unreasonable" in determinig facts in the record. While Judge Coker's testimony is "Guarded" and "Meticulous" after being forced to to resign from the bench less than 5 months earlier for unprofessional conduct on the bench. The "Court's findings are based on an evaluation of credibility and demeanor." (1st.CoA.mem.op at 7), no such deference is due in light of the evidence presented.

Furthermore in Exhibit "B", State Commission on Judical Conduct states:

> it "...expressed concerns that Judge Coker discussed the commission's investigation and Judge Coker's written responses to the investigation with a material witness prior to that witnesses' testimony before the Commission in an apparant attempt to influence that witness, and that the judge may not have been candid and truthful in her testimony before the commission when questioned about her contact with the witness." (Exhibit "B" at 2 para. 2)

Furthermore, Texas Court is also "unreasonable" in it's determination of facts when the Court finds: "she would not sign a warrant that did not provide adequate probable cause." (1st.CoA.mem.op at 8), And yet, testimony contradicts the Courts position.

Judge Coker reflects in testimony that in instances where she had to suppress her own warrants after relooking at the probable cause evidence at suppression hearings, determining that she shouldn't have granted this search warrant. (RR2 24:6-10). Her testimony on case at bar continues;

Q: "Okay. And as to whether or not you reviewed a two-page Exhibit A or a three-page Exhibit A, can you tell us which one you read and relied upon in ruling that there was probable cause to grant this search warrant?"

A: "No, I cannot say that at this time." (RR2 24:11-15)

The record reflects, Judge Coker did in fact sign warrants without adequate probable cause, only to later suppress them. (RR2 23:14-25) Ibid at ___.

Texas Courts decision to deny Petitioner's Writ of Habeas Corpus on the findings of the trial court without a hearing is "an unreasonable determination of the facts in light of the evidence presented in the State Court proceding." Evidence presented at "Suppression Hearing" contradicts State when a "Non-Neutral" Judge issuing warrant does not know whether she reviewed a 2 or 3 page "Probable Cause" affidavit. Furthermore, all parties are in agreement that the 2 page version does not support probable cause, but yet is the only version filed with the Court.

Texas Courts decision to deny relief to Petitioner was "contrary to" clearly established Federal Law, as determined by the Supreme Court of the United States., When in: <u>Minnesota v Carter</u>, "No warrant shall issue but upon probable cause, supported by oath or affirmation." 119 S.Ct. 469, 473 (1998).

SECTION 2)

Unlawful Execution of Search Warrant and Withholding of Evidence:
Suppression Hearing of April 17, 2014 continues.

Det. Lima testifies as author/scriber of the warrant, remaining on scene, implies he sent 3 pages to office printer of Exhibit "A" and warrant, requests officer Smith to have Judge sign, and bring to him at Lovell residence. Det. Lima takes folded document from Officer Smith and secures it in his vehicle without reviewing or showing it to defendant. (RR2 29-31:5). "the original or a duplicate original warrant must (be shown) to defendant" Fed.R.4(c)(3)(A).

The discovery of a 2 page version of Exhibit "A" <u>with</u> an "Unexecuted" return and inventory/evidence log "Sl201616" attached is made at the Suppression Hearing during examination of Det. Lima. Det Lima testifies, the yellow copy of log is "suppose to go to defendant", this would be standard protocol under Fed.R.41(f)(1)(c) and TCCP 18.06(b). Det. Lima is asked, "The fact that there is the white and yellow copy is indicative of the fact that no receipt of property was left at residence at completion of the search warrant." Det. Lima responds; "That's Correct" (RR2 38-41:10). Fed.Rule 41.(f)(1)(C) states:

> "The officer executing the warrant must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken or leave a copy of the warrant and receipt at the place where the officer took the property."

Inventory record/Evidence Log Sl201616 shows: Items seized, location found, and disposition of item. This record intentionally withheld from Defense During suppression hearing, Defense Counsel asks for copies of this documentation. (RR2 42:6-10) Court denies, And yet Incredibly, Orders Det. Lima to secure documents within his file, Denying "Yellow Copy" to Defense Counsel. (RR2 43:8-10; 45:1-5). Trial Counsel ensures this eggregious conduct is "on the record", this discovery of affidavit <u>with</u> "evidence log attached", that as of that moment was not noted in case file. (RR2 45).

On prosecutor's redirect, prosecutor asks to approach, then asks Det. Lima "You mentioned earlier about an original something in your file?" "Yes Ma'am" "Let me see that" (RR2 47:7-12). What is handed to prosecutor is "Original" Warrant which is now <u>FOUR</u> pages and signature page. Additionally, these pages have <u>NO Staple Holes</u>, indicating they were Never attached, unlike the aforementioned Exhibit "A". Ibid. This is contrary to Det. Lima's testimony at (RR2 31:24-25). Furthermore,

The signatures on Two of the pages were in <u>2 Different Colors of Ink</u>, Blue and Black, with the last page in Blue. This is indicative of signatures at different times or settings. Prosecutor suggests using paperclips, to protect integrity. Court allows only copies for Det. Lima and State, again refusing defense. (RR2 47-49)

Trial Court Judge, Kaycee L. Jones's involvement with Former Judge Coker's "Texting Scandal", by her own confession to Texas State Bar, see (Exhibit "A2" at 2) was repremanded, instructed to write a letter admonishing herself of her unprofessional behavior and lack of judgment. Judge Jones neglected to recuse

herself, who as a former Assistant District Attorney had an unsucessful prosecution against Petitioner. "Judge Jones acknowledged being the lead prosecutor, and...remembered the prior prosecution" at a hearing held October 29, 2014. See (CR 22749 vol. 1 pg 39-40).

Petitioner has shown prejudice to him by the Court for misconduct and withholding of evidence, failing to provide him a "Fair and Impartial" hearing which is "Fundamental" to Due Process guaranteed an accused "irrespective of the good faith or bad faith" by State **Strickler v Greene**, 527 U.S. 263 119 S.Ct. 1936 (1999). In meeting requirements of 28 U.S.C. 2254, States actions are contrary to and an unreasonable determination of clearly established Federal Law as determined by Supreme Court of the United States. While withholding of evidence is addressed in Ground 4, Relief to Petitioner should be granted him for the prejudice and bias the Court displayed to him.

## SECTION 3)
### Affiant of Warrant did not Swear Oath to Probable Cause Affidavit.

Det. Lima testifies: Affiant, Officer Smith "Had no first hand knowledge of anything in this affidavit." and "wasn't present observing all of these conversations and the like that are described in Exhibit "A"" (the probable cause affidavit) (RR2 34:18-35:9).

Officer Smith testifies: he was not with them when they initially went to (Petitioner's residence, he was at the sheriff's office. (RR2 51:4-12). "Chris advised me he was typing a search warrant for a residence and wondered if I could assist in getting the warrant signed." (RR2 51:16-20). This having been a calculated move since Judge Coker **Never** refused Officer Smith's warrants. (RR2 55:10-12). "I picked it up off the printer and took it to the Judge to have signed." (RR2 51:23-24). Officer Smith did not recall having a conversation with Det. Lima regarding the scene and facts noted in the search warrant or if he even read the warrant. (RR2 52:10-15)

When Officer Smith was asked if he recalled how many pages, he responded "there should have been four or five pages." (RR2 52:16-19), Indicative of not being checked when removed from the printer, if it is true Det. Lima sent 3.

When Officer Smith is asked to read Exhibit "A" of Defendants Exhibit 1, he states: "there is not enough probable cause here for any Judge to sign a warrant on." (RR2 53:17-24).

-(The Judge)"--she would pretty much want you to present the probable cause to her verbally." "A lot of times she would get you to swear that everything was true and correct on the warrant." "I can't say yes, she made you swear under oath everytime...I don't recall if she did or not every single time." (RR2 54: 17-24). Officer Smith is then asked, "Did you ever have occasion where you presented a search warrant to her and she did not sign it?" Answering "Never" (RR2 55:10-12). In this...case you presented the search warrant? "Correct". Did she sign it in your presence? "Yes, she did", Did she read it? "...I can't say she did or didn't" (RR2 55:13-23

Q: [Prosecutor] "Were you able to convey to her the terms of the probable cause or basis for probable cause, like you said you would normally do when it's your search warrant?" (RR2 55:24-56:1)

A: [Officer Smith] "If it was my search warrant, she -- I can't -- if I presented one to her that I typed and I verbally gave her the probable cause, I cannot tell you 100 percent sure that she would read the whole search warrant. With this not being my search warrant, I had no evidence of what went on out there on the scene. She would have to read the search warrant to get any probable cause from it. I had no knowledge of what went on out there at the scene." (RR2 56:2-9)

A Jurior of reason could conclude, When Officer Smith stated: "she would have to read the search warrant to get any probable cause from it",̄That, Officer Smith did not give a verbal assertation to any facts scribed in the probable cause affidavit. Moreover, "With this not being my search warrant, I had no evidence of what went on out there on the scene." Notwithstanding, NO Oath of Facts in the affidavit were sworn to, in violation of the Fourth Amendment of the United States Constitution.

Under cross-examination by Defense Counsel, Officer Smith's position remains:

Q: "And you don't rember whether she swore you in or not, do you ?"

A: "No, Sir, I do not."  (RR2 59:3-5)

In Sum, Det. Lima wrote the affidavit. Officer Smith, with no knowledge of events presented it, and Never presented a warrant to Judge Coker that she refused to sign, when he was the scriber or author. Furthermore, at no time was Judge Coker notified by Officer Smith that this affidavit was being presented to her by a person other than the scriber. Additionally, Nowhere on the affidavit does Det. Chris Lima's name appear on either version of Exhibit "A", enhancing Judge Cokers assumption Officer Smith was the scriber. Affiant, Officer Smith doesn't remember being sworn, or page count presented. (RR2 55-59)

Trial Counsel renews his objection to the warrant, "The issue is probable cause." Judge Kaycee L. Jones denies Motion to Suppress. (RR2 66:19)

1st Texas Court of Appeals is unreasonable in it's determination of facts when it implies: "affiant did personally swear to the truth of the facts in the affidavit." (1st CoA.mem.op. at 10), And yet, the record is contrary to the Honorable Courts position.

Texas Courts made an unreasonable determination of the facts in light of evidence presented in the State Court Proceeding. Whereas testimony of Former Judge Coker, and Officer Smith clearly contradict States position. State Courts denial for relief was "contrary to" clearly established Federal Law, as determined by the Supreme Court of the United States." In **Minnesota v Carter**, "No warrant shall issue but upon probable cause, supported by Oath of affirmation." 119 S.Ct. 469, at 473 (1998).

**Relief is requested by Petitioner for the Constitutional Violations.**

Alternatively, Counsel ineffective, for failing to properly argue all the issues, and for appellate counsels deficiencies and prejudice in the cumulative errors in this ground in preperation for appellate review, under the **Strickland** Standard, **Strickland v Washington**, 466 U.S. 668 (1984).

## CONCLUSION AND PRAYER

Petitioner prays this Honorable Court after due consideration and review of his Petition for Habeas Corpus, and Memorandum in Support under 28 § 2254, that Relief be granted to Petitioner.

That this Honorable Court vacate Petitioner's sentence, overturn his conviction, remand Petitioner to trial court so that he may answer the charges in a "Fair and Unbiased" Proceeding.

Alternatively, order an evidentiary hearing that Petitioner may be in attendence for, or any Relief this Honorable Court deems fit and proper.

## UNSWORN DECLARATION

I, Marshall Shane Lovell, do herby under the penalty of perjury and under Federal Law 28 U.S.C. § 1746 state: Petitioner's Unsworn Declaration is hereby given, that the stated facts in the forementioned, legal document are true and correct to the best of my belief.

I, Marshall Shane Lovell, being incarcerated at the Mark W. Stiles Unit in the County of Jefferson, State of Texas, do declare all foregoing statments and testimony are true and Correct in this Memorandum of support for writ of Habeas Corpus 28 § 2254.

Respectfully Submitted

*Marshall Lovell*

Marshall S. Lovell  Pro se
TDCJ 01970459
Mark W. Stiles Unit
3060 FM 3514
Beaumont TX, 77705

Executed 31st day of MAY, 2018

41

Exhibit "A" 1pg

To Whom It May Concern;

On Wednesday the 8th day of August 2012, the 258th District Court was in session in cause number ▓▓▓▓ the State of Texas V. ▓▓▓▓▓▓▓▓▓ in Polk County Texas. Presided over by 258th District Judge Elizabeth Coker.

I, David C. Wells, a Criminal Investigator for the Polk County Criminal District Attorney's Office was present in the Courtroom observing the direct examination by the Defense Attorney, Ryan Deaton of Lufkin, Texas of his Client and defendant ▓▓▓▓▓▓▓▓. I was also present for the cross examination by the Assistant Criminal District Attorney Beverly Armstrong of the said defendant.

I was sitting on the second row of the main Courtroom with Criminal Investigator Archie Chapman to my immediate left and Crime Victim Coordinator Sherry Sprayberry to my immediate right.

The next person to my second right was Assistant Criminal District Attorney Kaycee Jones.

The next person to my second left was Criminal District Attorney William Lee Hon.

I noticed A.D.A. Kaycee Jones was texting during the proceedings but did not pay any attention to her.

Lee Hon and I were sharing a yellow pad notepad sharing notes about the trial and maybe some questions to be taken to A.D.A. Beverly Armstrong, this is a normal course of business in the office during trial.

A.D.A. Jones asked me to give her the notepad which I did.

A.D.A. Kaycee Jones wrote a note to be given to A.D.A. Beverly Armstrong, I read the note and noticed A.D.A. Kaycee Jones had noted at the top of the page "Judge Says".

I handed the note to D.A. Lee Hon who shrugged and motioned for me to deliver the message to AD.A. Beverly Armstrong.

I did as directed and noticed that A.D.A. Beverly Armstrong did not ask the question posed by the Judge via A.D.A. Kaycee Jones.

I spoke to A.D.A. Beverly Armstrong this date 08-09-2012, and advised her I did not author the note and she advised it was not the first time as A.D.A. Kaycee Jones is in her ear all the time regarding Information she believes to be given to her by Judge Coker via text during trial.

I have discussed this with First Assistant Joe Martin this morning as I feel these actions are very unethical.

I retrieved the hand written note, by A.D.A. Kaycee Jones that I gave to A.D.A. Beverly Armstrong from the case file and have it secured.

*David C Wells* (signature)

EXHIBIT "A"

Exhibit
"A2" pg 1 of 2

# HOUSTON ★ CHRONICLE

HoustonChronicle.com and chron.com | Tuesday, October 22, 2013 | VOL. 113. NO. 9 | WE RECYCLE | $1.00 ★★★   ☐ Houston Chronicle  ☐ @HoustonChron

# East Texas judge quits in texting controversy

## She was accused of messaging prosecutor advice from bench, among other complaints

**By Cindy Horswell and Brian Rogers**

State district Judge Elizabeth E. Coker, the third generation from her family to don the black robe of power on an East Texas bench, resigned Monday to bring an end to a year-long probe into complaints about her

14-year tenure, ranging from witness tampering to engaging in improper communications with prosecutors and other attorneys.

In an agreement with the State Commission on Judicial Conduct, Coker admits no guilt and the commission stopped short of issuing any findings of misconduct.

"While I could have fought these allegations, it would have involved significant time, significant expense and disruption to everyone involved," Coker wrote in a surprise announcement that she was stepping down from the 258th court that covers Polk, Trinity and San Jacinto counties.

Coker said she was taking a leave of absence until her resignation takes effect on Dec. 6.

The agreement lists a litany of

*Judge continues on A7*

# Judge admits no liability, regrets 'lapses in judgment'

*Judge from page A1*

serious complaints that attorneys and others had leveled against Coker. They drew the spotlight of the national legal community, questioning everything from her sending as many as 40 clandestine text messages from the bench to help prosecutors in Polk and Trinity counties to slipping into the jury room to tell those deliberating how to vote.

If true, the unproven allegations violate one of the most fundamental rules of American criminal justice: the prohibition against one side getting to talk to the judge without the other side knowing about it, legal experts said.

"That would be a really, really big deal," judicial ethics expert and author Lillian Hardwick said of the "ex parte communication."

It is unfair, she said, noting that courts have quoted her own scholarly works in overturning convictions because of notes being passed between judges and prosecutors.

"When a judge sides with one lawyer in a two-lawyer proceeding, that increases the burden for the party that is refuting the other side," she said. "Instead of just fighting the state, the defendant would be fighting the state and the judge."

## First since 2009

Voluntary resignations like Coker's to avoid possible disciplinary action by the judicial commission are rare. She is the first district judge to do so since 2009. The last was Emil Karl Prohl from the 198th judicial district in Central Texas, who left the bench amid a probe of his spending of forfeiture funds.

Under the agreement Coker signed Saturday, she can never be elected to any judicial post or handle any judicial proceeding as a visiting judge, not even a marriage.

She will, however, retain her retirement income from her time served.

Though Coker admitted no liability, she said she would "always regret the lapses in judgment that



**Trinity County**

**Judge Elizabeth Coker will retain her retirement income but never can be elected again to a judicial post.**

helped create this situation," noting in her statement that the impartiality of the court system had always been her "highest priority."

But those who brought complaints to the judicial commission like attorneys Cecil Berg and Laura Prigmore believe the resignation was long overdue.

Berg, who has filed to run for Coker's seat, said "The Constitution of the United States as well as the constitution of the State of Texas guarantees its citizens a trial before a fair and impartial tribunal

... that was not happening in our counties."

The resignation agreement cites one particular texting incident, disclosed in Houston Chronicle articles, that involved Coker and then-prosecutor Kaycee Jones, who has herself since been elected a 411th district judge.

In a written confession to the Texas Bar Association, Jones has acknowledged receiving a text message from Coker while she was sitting on the bench but wanted to bolster the prosecution's case in a child abuse trial. "I was wrong and I knew better," Jones wrote.

Her part in this incident and other issues are scheduled to be reviewed next spring at a Texas Bar Association hearing.

## Many incidents

Prigmore said she has been told the text message was not an isolated incident and that as many as 40 other text messages have been turned over to investigators. Prigmore also said she has submitted a sworn statement from a court bailiff who

reports seeing Coker enter the jury deliberation room and instruct jurors on how to vote and what their verdict should be.

The resignation agreement alludes to these events as well as an incident where Coker made an "apparent attempt to influence" or corrupt a material witness in the commission's investigation. And, the document alleges Coker "may not have been candid and truthful" in her testimony to the commission about that material witness.

Coker is the first district judge since 2009 to resign instead of facing discipline, although a dozen other judges, mostly from municipal courts, have also chosen to give up the bench instead of arguing over the allegations in recent years, according to records from the State Commission on Judicial Conduct.

However, legal expert Hardwick said it is unlikely either Coker or Jones would be disbarred. The State Bar of Texas, which is a different agency than the commission, has

**More information**
»Online: Get background on the case at houston chronicle.com/coker

many levels of sanctions, including unpublished reprimands, before they begin disbarment proceedings, she said.

Claire Mock, a spokeswoman for the State Bar, said neither the judge nor the prosecutor have public disciplinary histories. In Texas, disciplinary matters are confidential unless a disciplinary petition is filed in district court or a public sanction has resulted from the process.

State records show that Coker's father, Lynn Coker, was a district judge from 1977 to 1992.

Likewise, his father, Ernest Coker, also was a longtime state district judge, according to the state's Office of Court Administration. He began his tenure on the bench in 1947 and served until 1977 and as a visiting judge until 1990.

*cindy.horswell@chron.com*
*brian.rogers@chron.com*

Exhibit "A3" 1 of 2 pgs

*The Dominant News and Advertising Source in Polk County for more than 100 years*
*Visit our website at www.EastTexasNews.com*

**VOLUME 131 NUMBER 85**          **THURSDAY, OCTOBER 24, 2013**          **50 CEN**

# Judge Coker resigns; state investigation ends

## Judicial conduct commission agreement bars Coker from future servic

LIVINGSTON— Judge Elizabeth Coker announced Monday she is resigning as judge of the 258th Judicial District Court effective on Dec. 6.

The resignation is the result of an agreement with the State Commission on Judicial Conduct after the commission leveled a variety of allegations against Coker, including alleged instances of inappropriate communication with attorneys and jury panels. The Code of Judicial Conduct regulates communication between judges, prosecutors, attorneys appearing in court and juries.

"The Judicial Commission made no finding or determinations of fact in my voluntary resignation, and I have not admitted guilt, fault or liability in my voluntary resignation," Coker said. "While I could have fought these allegations, it would have involved significant time, significant expense, and disruption to everyone involved. I did not feel that was in the best interests of the taxpayers, our court system, my family or myself.

"I love this judicial district. The people deserve a judge that is fully focused on carrying out their duties, which would have been impossible for me to do in this situation."

In addition, Coker said she is taking a voluntary leave of absence until the resignation takes effect on Dec. 6.

Cases in the 258th District Court – which includes Polk, San Jacinto and Trinity counties -- will now be assigned to visiting judges until a replacement can be found. Gov. Rick Perry could appoint a replacement to serve until the general election, to be held in November 2014. The winner of that election would take office almost immediately after the vote is canvassed.

"My dad and grandfather taught me that judges have to be accountable for their actions and conduct," Coker said. "Resigning the bench as well as taking a voluntary leave of absence is the best way for me to take responsibility for this situation in a way that honors the office and serves the best interests of Polk, San Jacinto and Trinity counties."

"It has been a painful decision, but I believe it is the right decision.

"I want to express my sincere regret to the people of Polk, San Jacinto and Trinity counties," Coker stated. "The integrity and impartiality of our courts have always been my highest priority, and I am deeply sorry that my actions created a circumstance where that could be questioned"

"The Judicial Commission takes the rules surrounding judicial interaction with parties in a lawsuit very seriously, and I will always regret the lapses in judgment that helped create this situation, especially knowing that my conduct as a judge is subject to a higher standard," Coker stated.

"It has been an honor of a lifetime serving as judge, and I will always be grateful the people of this district gave me such an amazing opportunity, and I am very sorry for the difficulty this has caused for everyone."

"My family has deep roots in Polk County, and now I am raising my girls in the same community that gave me my start. We will be starting a new chapter here for our family, and as always, I ask for your support and prayers. The kindness, friendship and love of so many people in these three counties have always sustained us, and I will always be grateful for that," she

See COKER, Page 3A



JUDGE ELIZABETH COKER

# COKER

**CONTINUED** from Page 1A

-added

Under the terms of the agreement with the commission, Coker is disqualified from sitting or serving as a judge in the future -- including presiding at weddings -- and from standing for election or appointment to any Texas judicial office.

The complaints filed against the judge stem from an August 2012 criminal jury trial in which she is alleged to have conducted improper communications with then Polk County Assistant Attorney Kaycee Jones. Coker is reported to have sent Jones a text message during testimony in the case.

The judicial conduct commission noted that it investigated this incident as well as other allegations of improper communications with other members of the Polk County District Attorney's Office, the San Jacinto County District Attorney's Office and "certain defense attorneys" regarding cases pending in her court.

The investigation also involved allegations that the judge exhibited "bias in favor of certain attorneys and prejudice against others in both her judicial rulings and her court appointments." Other allegations included that she met with jurors in an inappropriate manner, outside the presence of the attorneys, while jurors were deliberating one or more criminal trials.

Officials with the judicial commission also expressed concern that during their investigation, Coker "discussed the commission's investigation and Judge Coker's written responses to the investigation with a material witness prior to that witness' testimony before the commission in an apparent attempt to influence that witness."

According to the agreement, the commission officials felt that Coker also "may not have been candid and truthful in her testimony before the commission when questioned about her contact with the witness."

The agreement notes that the commission is making no findings of fact regarding the allegations and that Coker is not admitting guilt.

Exhibit "A3" 10 of 2 pgs

Exhibit A 4 pg 1 of 2

## COURTS

# Judge's case seen as 'test' of system

**By Cindy Horswell**

For Elizabeth Coker, becoming a judge was almost ordained.

She followed in the footsteps of her grandfather and father as the third generation to don the black robe of power in an East Texas courtroom.

But now some believe that family tradition should end with Coker, a state district judge of 14 years accused of sending secret text messages from the bench to bolster the prosecution's case during a criminal trial last year.

Such communication is a flagrant violation of judicial impartiality — one that legal experts say raised questions of whether Coker is fit to stay on the bench.

"It's an extremely egregious and very serious matter. If proven, such texting would be incompatible with a judge's role as a fair and impartial arbiter," said Robert Schuwerk, a University of

*Judge continues on B4*

Ex.ibit # 9 pg 200

# Judge accused of sending secret texts from bench

*Judge from page B1*

Houston law professor who teaches legal ethics and has co-authored a book on the subject. "Certainly, she should be considered for removal, especially if such actions were repetitive. I would expect there should be nothing less done to her than a suspension."

Coker, 46, whose 258th district court serves Polk, Trinity and San Jacinto counties, is accused of sending these text messages from the bench to prosecutors — unbeknownst to a defendant and his lawyer during a child injury trial last August. She could not be reached for comment.

Kaycee Jones, a former assistant prosecutor who received the initial text, has confirmed the incident in a letter she sent to the Texas Bar Association's disciplinary counsel, which is investigating the incident.

Jones provided a photo copy of the clandestine messages that detailed a



**Elizabeth Coker's case will be discussed in an Aug. 14 hearing.**

line of questioning the judge thought would help the prosecution win its case.

Texas Coalition on Lawyer Accountability spokeswoman Julie Oliver agrees with the UH law professor that such texting should have serious repercussions.

**One-sided discussions**

"If what happened is true, the judge seems to be demonstrating a willingness to freely violate the rules on ex parte communication," Oliver said. "In my opinion, anyone willing to do that is not qualified to be a judge."

Judges are forbidden from engaging in ex parte or one-sided discussions about a case without the defense and prosecution being included.

The State Commis-

sion on Judicial Conduct is barred from discussing any pending judicial complaints because all reviews are confidential. But several attorneys say the commission has subpoenaed them to give sworn testimony about Coker's conduct at an Aug. 14 grievance committee hearing.

"I'll be happy to talk to the committee," said Laura "Sissy" Prigmore, an attorney from Coldspring. She is one of five who have filed complaints about the judge with the judicial commission.

"We need protection from judges that want to be chitty chatty with just one side. I think it will be proven that this has happened more than once," said Prigmore, who expects a dozen witnesses may testify.

The Texas Criminal Defense Lawyers Association has also filed one of the complaints against Coker.

Bobby Mims, the association's president, said a complaint was filed

because the action was so provable and such an obvious violation of the judicial cannon of ethics. He pointed to the written confession Jones gave to the State Bar of Texas.

**Test for commission**

"In the statement, Jones apologizes and admits what happened was "wrong.""

Ryan Deaton, who was defense counsel in the case where the texting occurred, said he never knew it happened until months after his client was acquitted.

Prigmore and others believe Coker was trying to help the prosecution win because the judge had earlier rejected a guilty plea agreement which had forced the case to go to trial. However, the prosecution team elected not to use the questions recommended by Coker.

Mims and others are skeptical that the commission will issue any serious sanctions against Coker.

"Typically, this com-

mission does very little," Mims said. "When they do, it's often done in private. But Coker's actions are so egregious it could skew the whole system. It's a test now to see if this commission is really a disciplinary body or not."

The judicial commission receives more than 1,000 complaints against judges across the state each year, according to the Texas Sunset Commission's recent review. The vast majority are dismissed and only an average 6 percent are disciplined, with most of the proceedings held behind closed doors and kept confidential.

**Attorneys hesitant**

"We realize the public is cynical and suspicious of its government," said Seana Willing, the judicial commission's executive director. "But our express mission is not to punish judges. Our goal is to protect the public and promote confidence in the judiciary."

She said the main

reason more judges aren't sanctioned is that attorneys are often too afraid to speak out: "I can't count how many times, I contact attorneys for help and they say they have to practice in that courtroom. That to speak out could hurt their clients."

The last time the commission removed a judge was in 2005 when two were taken off the bench, although there have been other instances of judges leaving through resignations or convictions of a criminal act.

An average of four judges resign in lieu of being disciplined by the commission each year, and about another three each year are suspended, records show.

"It's a very rare occasion that a judge is removed," said Oliver, with the Texas Coalition on Lawyer Accountability. "We'd like to see the commission become more accountable to those bringing complaints."

*cindy.horswell@chron.com*

HOUSTON

HOUSTON★CHRONICLE

As low as $1 per week / Unlimited Digital Access

HoustonChronicle.com | App for iPhone and iPad | eEdition

SUBSCRIBE

# East Texas judge resigns amid texting probe

## She was accused of messaging prosecutor advice from bench

By Cindy Horswell and Brian Rogers | October 21, 2013 | Updated: October 21, 2013 10:01pm

0



Photo: DAVID J. PHILLIP, STF

Judge Elizabeth Coker will retain her retirement income but can never be elected again to a judicial post.

State district Judge Elizabeth E. Coker, the third generation from her family to don the black robe of power on an East Texas bench, resigned Monday to bring an end to a year-long probe into complaints about her 14-year tenure, ranging from witness tampering to engaging in improper communications with prosecutors and other attorneys.

In an agreement with the State Commission on Judicial Conduct, Coker admits no guilt



and the commission stopped short of issuing any findings of misconduct.

"While I could have fought these allegations, it would have involved significant time, significant expense and disruption to everyone involved," Coker wrote in a surprise announcement that she was stepping down from the 258th court that covers Polk, Trinity and San Jacinto Counties.

Coker said she was taking a leave of absence until her resignation takes effect on Dec. 6.

The agreement lists a litany of serious complaints that attorneys and others had leveled against Coker. They drew the spotlight of the national legal community, questioning everything from her sending as many as 40 clandestine text messages from the bench to help prosecutors in Polk and San Jacinto counties to slipping into the jury room to tell those deliberating how to vote.

If true, the unproven allegations violate one of the most fundamental rules of American criminal justice: the prohibition against one side getting to talk to the judge without the other side knowing about it, legal experts said.

**RELATED**



**Judge accused of texting prosecutor from bench to sway case**

**Editorial: A judge texting is taboo**



**Ex-prosecutor admits helping judge accused of sending secret text**

**State agency eyes cronyism complaints against judges**

"That would be a really, really big deal," judicial ethics expert and author Lillian Hardwick said of the "ex parte communication."

It is unfair, she said, noting that courts have quoted her own scholarly works in overturning convictions because of notes being passed between judges and prosecutors.

Exhibit "A5"



"When a judge sides with one lawyer in a two-lawyer proceeding, that increases the burden for the party that is refuting the other side," she said. "Instead of just fighting the state, the defendant would be fighting the state and the judge."

### First since 2009

Voluntary resignations like Coker's to avoid possible disciplinary action by the judicial commission are rare. She is the first district judge to do so since 2009. The last was Emil Karl Prohl from the 198th judicial district in Central Texas, who left the bench amid a probe of his spending of forfeiture funds.

Under the agreement Coker signed Saturday, she can never be elected to any judicial post or handle any judicial proceeding as a visiting judge, not even a marriage.

She will, however, retain her retirement income from her time served.

Though Coker admitted no liability, she said she would "always regret the lapses in judgment that helped create this situation," noting in her statement that the impartiality of the court system had always been her "highest priority."

But those who brought complaints to the judicial commission like attorneys Cecil Berg

**TRANSLATOR**

To read this article in one of Houston's most-spoken languages, click on the button below.

Select Language | ▼

*Exhibit "X 5"*

and Laura Prigmore believe the resignation was long over due.

Berg, who has filed to run for Coker's seat, said "The Constitution of the United States as well as the constitution of the State of Texas guarantees its citizens a trial before a fair and impartial tribunal … that was not happening in our counties."

The resignation agreement cites one particular texting incident, disclosed in Houston Chronicle articles, that involved Coker and then-prosecutor Kaycee Jones, who has herself since been elected a 411th district judge.

In a written confession to the Texas Bar Association, Jones has acknowledged receiving a text message from Coker while she was sitting on the bench that were designed to bolster the prosecution's case in a child abuse trial. "I was wrong and I knew better," Jones wrote.



Her part in this incident and other issues are scheduled to be reviewed next spring at a Texas Bar Association hearing.

## Many incidents

Prigmore said she has been told the text message was not an isolated incident and that as many as 40 other text messages have been turned over to investigators. Prigmore also said she has submitted a sworn statement from a court bailiff who reports seeing Coker enter the jury deliberation room and instruct jurors on how to vote and what their verdict should be.

The resignation agreement alludes to these events as well as an incident where Coker made an "apparent attempt to influence" or corrupt a material witness in the commission's investigation. *Exhibit A5*"

And, the document alleges Coker "may not have been candid and truthful" in her testimony to the commission about that material witness.

Coker is the first district judge since 2009 to resign instead of facing discipline, although a dozen other judges, mostly from municipal courts, have also chosen to give up the bench instead of arguing over the allegations in recent years, according to records from the State Commission on Judicial Conduct

However, legal expert Hardwick said it is unlikely either Coker or Jones would be disbarred. The State Bar of Texas, which is a different agency than the commission, has many levels of sanctions, including unpublished reprimands, before they begin disbarment proceedings, she said.

Claire Mock, a spokeswoman for the State Bar, said neither the judge nor the prosecutor have public disciplinary histories. In Texas, disciplinary matters are confidential unless a disciplinary petition is filed in district court or a public sanction has resulted from the process.



State records show that Coker's father, Lynn Coker, was a district judge from 1977 to 1992.

Likewise, his father, Ernest Coker, also was a longtime state district judge, according to the state's Office of Court Administration. He began his tenure on the bench in 1947 and served until 1977 and as a visiting judge until 1990.

Exhibit "5"

**Cindy Horswell**

Reporter, The Woodlands, Houston
Chronicle



**Brian Rogers**

Legal Affairs Reporter,
Houston Chronicle

H E A R S T *newspapers*

© 2017 Hearst Newspapers, LLC.





## BEFORE THE
## STATE COMMISSION ON JUDICIAL CONDUCT

IN RE: HONORABLE ELIZABETH E. COKER
258TH JUDICIAL DISTRICT COURT JUDGE
LIVINGSTON, POLK COUNTY, TEXAS
CJC Nos. 13-0376-DI, 13-0448-DI, 13-0471-DI, 13-0712-DI, 13-0815-DI, 13-0101-DI

### VOLUNTARY AGREEMENT TO RESIGN FROM
### JUDICIAL OFFICE IN LIEU OF DISCIPLINARY ACTION

This Agreement is being entered into by the undersigned parties pursuant to Section 33.032(h) of the Texas Government Code.

WHEREAS at all times relevant hereto, the Honorable Elizabeth E. Coker was Judge of the 258th Judicial District Court in Livingston, Polk County, Texas;[1] and

WHEREAS in late December 2012 and early January 2013, complaints and media stories were brought to the Commission's attention alleging that Judge Coker had engaged in improper *ex parte* text communications with Polk County Assistant District Attorney Kaycee Jones while Judge Coker presided over the criminal jury trial of *State v. David M. Reeves* in August 2012; and

WHEREAS based on the above-referenced complaints, the Commission commenced an investigation into allegations that Judge Coker used Assistant District Attorney Jones to privately communicate information about the *Reeves* case to the assistant district attorney prosecuting the case; to suggest questions for the prosecutor to ask during the trial; to ensure that a witness was able to refresh his memory and rehabilitate his testimony by reviewing his videotaped interview with law enforcement before he took the stand for the second time the following day; and to discuss legal issues pertinent to the case, in an unsuccessful effort to assist the State obtain a guilty verdict in the case;

WHEREAS in addition to the allegations arising out of the *Reeves* trial, the Commission investigated claims that Judge Coker allegedly engaged in other improper *ex parte* communications and meetings with Jones, other members of the Polk County District Attorney's Office, the San Jacinto County District Attorney, and certain defense attorneys regarding various cases pending in her court; Judge Coker allegedly exhibited a bias in favor of certain attorneys and a prejudice against others in both her judicial rulings and her court appointments; and Judge Coker allegedly met with jurors in an inappropriate manner, outside the presence of counsel, while the jurors were deliberating in one or more criminal trials;

---

[1] The 258th Judicial District includes Polk, San Jacinto, and Trinity Counties.

Exhibit "B"
pg 2 of 4

WHEREAS following a full investigation into the complaints, the Commission conducted informal hearings in the matter and obtained the sworn oral testimony of several witnesses and Judge Coker; and

WHEREAS the Commission also expressed concerns that Judge Coker discussed the Commission's investigation and Judge Coker's written responses to the investigation with a material witness prior to that witness' testimony before the Commission in an apparent attempt to influence that witness, and that the judge may not have been candid and truthful in her testimony before the Commission when questioned about her contact with the witness; and

WHEREAS no Findings of Fact or Conclusions of Law have been made by the Commission in connection with the above-referenced matters; and

WHEREAS the parties agree that the allegations of judicial misconduct, if found to be true, could result in disciplinary action against Judge Coker; and

WHEREAS the parties to this Agreement wish to resolve this matter without the time and expense of further disciplinary proceedings.

IT IS THEREFORE AGREED that Judge Coker, upon the signing of this Agreement, agrees that she will officially and formally resign her judicial office effective **December, 6, 2013.** On October 21, 2013, Judge Coker shall send a formal letter of resignation to the Governor notifying him of the effective resignation date, and will take a voluntary leave of absence from all of her duties and responsibilities as Judge of the 258th Judicial District Court starting October 21, 2013 through December 6, 2013. Judge Coker is entering into this Agreement to resolve the above-referenced complaints in lieu of disciplinary action by the Commission, pursuant to Section 33.032(h) of the Texas Government Code. The Commission agrees that it shall pursue no further disciplinary proceedings against Judge Coker in connection with the above-referenced matters.

IT IS FURTHER AGREED that, upon the effective date of Judge Coker's resignation, Judge Coker shall thereafter be disqualified in the future from: sitting or serving as a judge in the State of Texas; standing for election or appointment to judicial office in the State of Texas; or performing or exercising any judicial duties or functions of a judicial officer in the State of Texas, including the performance of wedding ceremonies.

IT IS FURTHER AGREED that any violation of this Agreement by Judge Coker would constitute willful or persistent conduct that is clearly inconsistent with the proper performance of her duties or casts public discredit upon the judiciary or administration of justice in violation of Art. 5, §1-a(6)A of the Texas Constitution, and Section 33.001(b) of the Texas Government Code, and would result in the commencement of formal proceedings against Judge Coker by the Commission, and the release of an Agreed Statement of Facts in support of the Commission's charges against Judge Coker.

IT IS FURTHER AGREED that the Commission may enforce this Agreement through any legal process necessary, including injunctive relief; that Travis County, Texas, shall be the proper venue for any dispute between the parties or proceeding relating to this Agreement; and that Judge Coker, individually, shall bear the expense, cost, and any reasonable and necessary attorneys' fees in the event any dispute arising under this Agreement is decided against her by any court or tribunal.

*Exhibit "B"*
*pg 3 of 4*

IT IS FURTHER AGREED that Judge Coker, by her execution of this voluntary agreement, does not admit guilt, fault or liability regarding the matters contained in the complaints and allegations referenced above.

**AGREED TO AND ACCEPTED** upon its execution by the parties.

ELIZABETH E. COKER

TOM CUNNINGHAM, CHAIR
STATE COMMISSION ON JUDICIAL
CONDUCT

Date: 10|19|13

Date: 10/21/2013

**AGREED AS TO FORM:**

Attorney for Elizabeth E. Coker

Dick Deguerin
Special Counsel for the Commission

3

Exhibit
4 of 4

## VERIFICATION

State of Texas          §
County of Polk          §

    BEFORE ME, the undersigned authority, on this day personally appeared
ELIZABETH E. COKER, who by me being first duly sworn, on her oath deposed and
said that the above "Voluntary Agreement to Resign from Judicial Office in Lieu of
Disciplinary Action" is a true and correct recitation of the parties' Agreement and
accurately reflects her understanding of the terms and conditions of, and voluntary
consent to enter into, such Agreement.

    SWORN TO BEFORE ME, on this the ___19___ day of October, 2013.


                                    Maria Ramirez
                                    NOTARY PUBLIC, IN AND FOR THE
                                    STATE OF TEXAS

                                    MARIA RAMIREZ
                                    NOTARY PUBLIC, STATE OF TEXAS
                                    COMMISSION EXPIRES
                                    07-02-2016

Marshall S. Lovell                                    May 31, 2018
TDCJ 01970459
Mark W. Stiles Unit
3060 FM 3514
Beaumont TX, 77705

Clerk of the Court
United States District Court
Eastern Division of Texas
Beaumont Division
300 Willow St. Room 104
Beaumont TX, 77701-2217

RE: Federal Habeas Corpus 28 § 2254

Clerk of the Court,

    Please find enclosed my Petition a for Writ of Habeas Corpus.
Additionally, Please find enclosed my memorandum in support, exhibits, self-
addressed stamped envelope, and an extra copy of my cover letter.

    Please submit my petition and attachments to the Court in the normal
course of business. And, Please return to me in the S.A.S.E the extra copy of
this cover letter with file stamp and cause number assigned.

                                    Thank you, in advance

                                    Marshall Lovell

                                    Marshall S. Lovell